HOWE SEWING-MACHINE Co. v. ROSENSTEEL and others.

(*Circuit Court, W. D. Pennsylvania.* August 4, 1885.)

1. CONTRACT—EFFECT OF DEATH OF PARTY.

Where a contract creates between the parties merely a personal relation, the death of either party dissolves that relation.

2. SAME—CASE STATED.

A written contract between a sewing-machine company and W. recited a sale by the former to the latter of 100 Howe sewing-machines, for the price of which W. had given a series of notes; the company stipulating to accept, on or before their maturity, the amount due thereon in notes of sub-purchasers drawn to the order of W. and guarantied by him. The company was to ship to W. a specified number of the machines monthly, and W. agreed to sell them within a specified territory at the regular retail prices established by the company, and to deal only in its machines. After 15 machines (which have been paid for) were delivered, W. died. *Held*, that his undertaking was personal to himself, and the duty of further performance did not devolve on the administratrix of his estate.

At Law. *Scire facias quare executionem non.* *Sur* rule for judgment.

*S. W. Cunningham,* for plaintiff.

*George C. Wilson,* for defendant.

ACHESON, J. Conceding that the relationship between the Howe Sewing-machine Company and T. T. Wherry was not that of principal and agent, it still remains to be determined whether the agreement of February 11, 1884, established between them anything more than a personal relation which the death of the latter dissolved. This is the controlling question. The agreement recites that the company has sold to Wherry 100 Howe sewing-machines for $2,500, and received in settlement his 11 specified notes, running from 6 to 16 months; the company stipulating to accept, on or before the maturity of said notes, the amount due thereon in notes taken in payment for sewing-machines sold by Wherry, on certain conditions, one of which is that the notes so applied shall be drawn to his order, and the prompt payment of the same guarantied by him; and the company agrees to ship to Wherry a specified number of the said machines monthly, beginning with February and ending with December, 1884. Then follow these provisions:

"The said T. T. Wherry agrees * * * to sell the said machines at the regular retail prices established by said the Howe Sewing-machine Company in the following territory, viz., Indiana, Pa.; and, further, * * * that he will not sell or deal in any other machine but the Howe."

Wherry died on April 26, 1884. Fifteen of the machines had then been delivered, and they have been paid for. Did the contract, in so far as as it remained wholly executory at the time of Wherry's death, survive against the administratrix of his estate? This is quite unlike the case of *Wentworth* v. *Cock*, 10 Adol. & E. 42, in which it was held that the vendee's administrator was bound to receive and pay for

certain slate, for there the contract was simply an ordinary sale of goods deliverable at stated periods. But here the agreement contemplates and provides for the resale of the sewing-machines by Wherry. In principle our case is much nearer that of *Robson* v. *Drummond*, 2 Barn. & Adol. 303, where a contract by a coach-maker to furnish a carriage for five years and keep it in repair, was held to be personal to him, and therefore not assignable by him. How can the administratrix comply with the provisions of this agreement? How is the right to substitute the notes of purchasers for Wherry's notes to be exercised? In her representative capacity the administratrix cannot enter into the new engagements which such substitution involves, and she is not bound to assume any personal liability. The scheme throughout is incompatible with the official duties of the administratrix. The property would be withdrawn from the regular course of administration by force of that clause of the agreement which prescribes that the sale of the machines shall be at a particular place and at retail prices fixed by the sewing-machine company. The agreement, if obligatory upon the administratrix, would constitute her a vendor of sewing-machines for an indefinite period, and the settlement of the estate of the decedent might thereby be unduly postponed. Moreover, it is not difficult to perceive that while in form there was a sale by the plaintiff company to Wherry of 100 sewing-machines, yet the real intention of the parties was that the machines should be retailed for the benefit of the company, whose interest it is to extend the use of the Howe machine and multiply customers. The above-quoted clause of the agreement regulating resales is not restrictive merely, but Wherry expressly covenants "to sell the said machines at the regular retail prices," etc., in the territory named; and it is not a strained inference that he was selected for this service by reason of his peculiar fitness. Indeed, it seems to me that his personal performance of the agreement is of its very essence. In *Dickinson* v. *Calahan's Adm'rs*, 19 Pa. St. 227, where a lumber manufacturer contracted to sell to a lumber merchant all the lumber to be sawed at his mill during five years, the quantity to average 300,000 feet a year, for which he was to be paid as the lumber was delivered, and he died before the time had elapsed, it was held that his administrators were not bound to fulfill the contract for the remainder of the time. That was a well-considered case, and it furnishes a sound principle for adoption here. The principle is that where a contract creates between the parties merely a personal relation, the death of either party dissolves that relation. I am of opinion that the undertaking of Wherry was of a strictly personal nature, and that the duty of performance did not devolve upon his administratrix.

The rule for judgment is discharged.