DAYTON METROPOLITAN HOUSING AUTHORITY, APPELLANT, *v.* MCKEE, APPELLEE.

(No. 10122—Decided May 28, 1987.)

*James John Schubert,* for appellant.

*Legal Aid Society of Dayton, Inc.* and *Dorothy M. Kantosky,* for appellee.

BROGAN, J. On June 4, 1986, plaintiff-appellant filed a forcible entry and detainer action in the Dayton Municipal Court against defendant-appellee, Marilyn McKee. The appellant, Dayton Metropolitan Housing Authority ("DMHA"), sought restitution of the premises as a result of an alleged non-payment of rent.

Prior to 1986, appellee rented a public housing unit from DMHA for $1 per month as an unemployed tenant. Although appellee began work in Feb-

ruary 1985, her new status remained unknown to DMHA until February 1986. As an alternative to demanding a lump-sum payment for the past due rent, a retroactive rent payment agreement was executed between the parties on March 20, 1986 whereby McKee agreed to pay off her arrearages in fifteen monthly installments of $58.20. Although McKee timely offered her new monthly rental amount of $133 on May 1, 1986, the payment was refused as it was not accompanied by the retroactive rent payment. McKee was subsequently served with a notice of termination for nonpayment of rent on May 8, 1986, and a notice to vacate and leave the premises on May 22, 1986.

At trial the court below found the additional payment of $58.20 constituted miscellaneous charges and did not fall within the regulatory definitions of rent found in Sections 913.102 and 913.107, Title 24, C.F.R. The court also found the fourteen-day notice of termination for failure to pay a miscellaneous charge insufficient. DMHA promptly filed a notice of appeal with this court on September 18, 1986 and asserts two assignments of error:

"I.  The municipal court erred in ruling that amounts owed by tenants of a public housing authority representing past-due rent, recalculated pursuant to federal law after tenants had deliberately concealed their true income, was not rent but instead constituted a miscellaneous charge.

"II.  The municipal court erred in ruling that a fourteen-day notice of termination for nonpayment of rent was insufficient for a breach of a retroactive rent repayment agreement."

Initially, we must determine if the retroactive payments are to be considered rent or miscellaneous charges for purposes of Section 966.4(l)(2)(i), Title 24, C.F.R. notice requirements. Section 1437a(a), Title 42, U.S. Code, defines "rent" for public housing tenants as follows:

"* * * A family shall pay as rent for a dwelling unit assisted under this chapter (other than a family assisted under section 1437f(o) of this title) the highest of the following amounts, rounded to the nearest dollar:

"(1)   30 per centum of the family's monthly adjusted income;

"(2)   10 per centum of the family's monthly income; or

"(3)   if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payments which is so designated."

Further regulatory definitions of rent are found in Section 913.102, Title 24, C.F.R.:

"*Tenant Rent.* The amount payable monthly by the Family as rent to the PHA [Public Housing Agency]. Where all utilities (except telephone) and other essential housing services are supplied by the PHA, Tenant Rent equals Total Tenant Payment. * * *

"*Total Tenant Payment.* The monthly amount calculated under § 913.107. Total Tenant Payment does not include charges for excess utility consumption or other miscellaneous charges (see § 966.4 of this chapter)."

Likewise, Sections 966.4(b)(2) and (b)(3), Title 24, C.F.R., list types of miscellaneous charges:

"(b)  *Payments due under the lease.* (1) * * *

"(2)  The lease shall provide for charges to tenants for maintenance and repair beyond normal wear and tear and for consumption of excess utilities. The lease shall state the basis for the determination of such charges (e.g., by a posted schedule of charges for repair, amounts charged for utility

consumption in excess of the allowance stated in the lease, etc.). * * *

"(3) At the option of the PHA, the lease may provide for:

"(i) Payment of penalties for late payments.

"(ii) Security deposits which shall not exceed one month's rent or such reasonable fixed amount as may be required by the PHA. Provision may be made for gradual accumulation of the security deposit by the tenant. * * *"

It seems clear to this court the tenant's retroactive payments were payments of "rent" for past occupancy of her dwelling. The ordinary meaning of the term "rent" implies an amount paid as consideration for use or occupancy of property. See, *e.g., Aujero* v. *CDA TODCO, Inc.* (C.A. 9, 1985), 756 F. 2d 1374, 1376. Ohio courts have defined rent similarly as compensation rendered for use of lands by a person permitted to hold or enjoy them. *Sutliff* v. *Atwood* (1864), 15 Ohio St. 186, 193. The ordinary meaning of rent differentiates retroactive rent payments from unreasonable wear and tear penalties, late charges, or security deposits which are more properly designated miscellaneous charges. It is necessary to recognize every amount representing an adjustment in rent does not constitute a miscellaneous charge. This is especially true when retroactive rent payments represent arrearages for actual rent previously accrued and fraudulently withheld from the public housing authority. Consequently, we sustain appellant's first assignment of error.

By treating the retroactive payments as rent, there is no violation of the rent ceilings for public housing tenants found in Section 1437a(a), Title 42, U.S. Code. Those limitations, intended to apply to the current month's rent only, do not preclude certain rent modifications from surpassing thirty percent of the tenant's income. As stated in *Beckham* v. *New York City Housing Auth.* (C.A. 2, 1985), 755 F. 2d 1074, 1080:

"* * * [S]ection 1437a of OBRA [Omnibus Budget Reconciliation Act of 1981] and its implementing regulations do not prohibit local housing authorities from establishing a basic 'economic' rent schedule in excess of the rental limitations contained in that section."

We are not persuaded that *Beckham* should be narrowly applied. On the contrary, the maximum rent ceilings in Section 1437a(a) are directed to tenants who have complied with requirements of informing the housing authority of a new income status. Failure to comply with the terms of the lease and federal law requirements causes the tenant to be ineligible for the protection of subsidy ceilings. See *Versailles Arms Apartments* v. *Granderson* (La. App. 1980), 386 So. 2d 1039, 1042. In fact, the congressional intent behind the Omnibus Budget Reconciliation Act of 1981 emphasized both efficiency and incentives for good management in rent collection which the retroactive rent agreement between DMHA and appellee was meant to further. *Beckham, supra,* at 1078. DMHA is not precluded from charging retroactive rent payments even though, when coupled with current monthly rent charges, the total payments exceed the thirty-percent ceiling.

Having determined the retroactive payments constitute rent, the fourteen-day notice of termination given to appellee was sufficient under Section 966.4(l)(2)(i), Title 24, C.F.R. The second assignment of error is therefore well-taken.

The judgment of the court below is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

KERNS and WILSON, JJ., concur.