Appellant operates Westland Gardens Apartments, a federally subsidized apartment complex in Toledo, Lucas County, Ohio. On January 1, 1996, appellee, LaShawna Madden, entered into a one year lease for an apartment in Westland Gardens. At the time she entered into the lease, appellee's financial situation was such that she was not required to pay any of the monthly rent; the entire amount was paid by the federal government.
It was later discovered that Madden had income in the form of wages and her share of the rent was adjusted pursuant to the recertification procedures required by the United States Department of Housing and Urban Development ("HUD") Handbook, Occupancy Requirements of Subsidized Multifamily Housing Programs. Over the next six months, appellee's rent was recertified two more times. Appellee's share of the rent total as the result of the recertifications was made retroactive to specific dates — July 1, 1996, November 1, 1996 and January 1, 1997. Retroactive rent is permitted by Section 5.7, Chapter 5, of the HUD Handbook containing rules governing procedures used in subsidized housing programs. See, also, Paragraph 15a[1] of the lease between the parties. The record of this case contains two notifications of the change in the amount of rent to be contributed by appellee. Those notifications are both dated April 17, 1997 and relate to the November 1, 1996 and January 1, 1997 recertifications[2].
At trial, appellee testified that she signed the recertification "worksheets" but did not realize that she was responsible for the amount of rent listed therein. The worksheets for the July and November recertifications are dated December 18, 1996 and the one for January 1997 is dated April 24, 1997. Appellee never paid any of the retroactive rent and, as of May 1997, had accumulated an arrearage of $2,775.85.
In April 1997, appellant filed a complaint in forcible entry and detainer seeking restitution of the premises. Appellant alleged that appellee was in default on the payment of her rent. The municipal court found, among other things, that appellee was not properly served with a notice to vacate the premises and denied appellant's petition for a writ of restitution. Appellant appealed. This court addressed only the propriety of the service on appellee and affirmed the trial court's judgment. See Owner"sManagement Co. v. Madden (Mar. 31, 1998), Lucas App. No. L-97-1206, unreported ("Madden I").
While Madden I was on appeal, appellant and appellee executed a new lease, dated January 1, 1998. According to the undated invoice sent to appellee by Owner's Management Company, her share of the rent payment for the months of January through April 1998 was $0 per month. Beginning in May 1998, and after recertification, appellee's share of the rent was $165 per month. Appellee tendered this amount to appellant from June through September 1998, but Owner's Management refused the rent payments because appellee declined to enter into a repayment plan offered to her after this court's decision in Madden I and she failed to make any payment on the arrearage owed from 1996-1997.
On August 14, 1998, appellant served appellee with a three day notice of termination of her lease and a notice to leave the premises. The basis of the eviction was appellant's alleged nonpayment of rent. On August 31, 1998, appellant filed a complaint seeking a writ of restitution of the premises and asserting that appellee had a "rental arrearage" in breach of her lease agreement. The rent arrearage consisted of the retroactive rent owed in 1996-1997 and amounts accumulated as the result of appellant's refusal of rent tendered by appellee in 1998.
A hearing was held before a magistrate. In his decision, the magistrate stated:
 "Upon testimony and evidence presented by both sides, Findings: 1) alleged non-pmt. [nonpayment] predates New 1/1/98 lease (Ex. E), 2) Pmts. [payments] tendered from June-Sept. 1998 and refused, 3) Notice to Vacate of 8/14/98 premature, and 4) Eviction for past arrearages (pre-lease) is not `material noncompliance' but may be `other good cause.'"
Appellant filed timely objections to the magistrate's report; the municipal court overruled these objections and "affirmed" the decision and recommendation of the magistrate.
Appellant sets forth three assignments of error[3]
supported by a single combined argument. Essentially, appellant contends that (1) the trial court's judgment is erroneously based on the belief that the execution of a new lease waives a Section 8 landlord's right to evict a tenant for nonpayment of retroactive rent; (2) the trial court erred in determining that the nonpayment of a retroactive rent arrearage does not constitute a breach of the lease based on "material noncompliance," i.e., nonpayment of rent, but, rather, is a breach for "good cause" thereby involving different notice requirements.
Under the terms of the lease in this case, termination of appellant's lease "for good cause" requires a thirty day notice, whereas termination for material noncompliance must meet the requisites of HUD and state or local law. See Section 880.607, Title 24, C.F.R. (requiring such terms in the lease). Here, if nonpayment of retroactive rent is a material noncompliance, then the notice procedures in this case were proper.
In Dayton Metropolitan Housing Authority v. McKee
(1987), 37 Ohio App.3d 102, the Second District Court of Appeals determined that retroactive rent arrearages are "rent" for the purpose of determining what type of notice is required to evict a tenant of a public housing unit. We agree with the reasoning of the McKee court and conclude that the nonpayment of retroactive rent is a material noncompliance with the terms of a tenant's lease. Therefore, at first blush, it appears that the trial court erred in reaching a contrary finding. However, our interpretation of the trial court's holding is that, by entering into a new lease with appellee, appellant waived the right to claim that the retroactive rent arrearage was a material noncompliance with the 1996 lease. Therefore, in the trial court's opinion, under the particular facts of this case, the failure to pay retroactive rent can serve only as a basis for termination of the tenancy for "good cause."
Waiver is "an intentional relinquishment, either expressly or constructively, of a known right." Russell v.Fourth Nat. Bank (1921), 102 Ohio St. 248, 269. "It may be made by express words or by conduct which renders impossible a performance by the other party, or which seems to dispense with complete performance at a time when the obligor might fully perform." White Co. v. Canton Transp. Co. (1936), 131 Ohio St. 190,198-199. See, also, Saydell v. Geppetto's Pizza RibsFranchise System (1994), 100 Ohio App.3d 111, 122-123.
Actions, such as acceptance of future rent or entering into a new lease, by a landlord which are inconsistent with a service of notice to vacate result in a waiver of that notice.Vistula Management Co. v. Newson (1997), 120 Ohio App.3d 500,504; Chillicothe Metropolitan Housing Authority v. Anderson (June 28, 1988), Ross App. No. 1406, unreported, citing Quinn v. CardinalFoods Inc. (1984), 20 Ohio App.3d 194, 196; 1 Taylor on Landlord and Tenant, Section 287; Brokamp v. Linneman (1923), 20 Ohio App. 199,202.
Appellant asserts that the case before us is different than the usual case in that the new lease was executed prior to the notice to vacate the premises. Thus, the act of entering into the lease does not affect the notice to vacate. We must disagree.
As admitted by appellant, the tenant conduct underlying appellant's basis for termination of appellee's tenancy is actually related to the January 1, 1996 lease. Thus, the notice to terminate is actually in reference to that lease. Nevertheless, we must conclude that appellant did not waive its notice to vacate/forfeiture of the leasehold based on nonpayment of the 1996-1997 retroactive rent by entering into a new lease in January 1998.
Appellant attempted to evict appellee from the premises in 1996. While that case was on appeal, appellant was required, pursuant to HUD rules and regulations, to recertify appellee. See Section 880.609, Title 24 C.F.R. Section 880.607(b) (iv), Title 24 C.F.R. expressly forbids termination of a Section 8 tenancy "solely because of expiration of an initial or subsequent renewal term." Further, it appears from a review of the regulations as a whole that the subsidies paid to Section 8 rental property owners are payable for eligible families under a written lease with a term of not less than one year. See, e.g., Sections 880.606; 880.501; 880.609; 880.611(c) (1), Title 24 C.F.R. Thus, it seems that appellant had little recourse during the pendency of the appeal of Madden I but to enter into a new lease with appellant.
After our decision in Madden I, appellant again made numerous attempts to collect the arrearage, but was again forced to file a forcible entry and detainer action. Thus, while we fully realize that the intent of 42 U.S.C. § 1437 and Section 880.101, Title 24, C.F.R. is to provide decent, safe and sanitary housing for lower income families, we must find that appellant did not, under the particular facts of this case, relinquish its right, either expressly or constructively, to obtain a writ of restitution based on appellee's failure to pay retroactive rent.
Accordingly, appellant's three assignments of error are found well-taken.
The judgment of the Toledo Municipal Court is reversed. This cause is remanded to the trial court for entry of a writ of restitution of the premises located at 1854 Westland Gardens, #201. Appellee is ordered to pay the costs of this appeal.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ______________________________ Melvin L. Resnick, J.
JUDGE
 _________________________________ Mark L. Pietrykowski, J.
JUDGE
CONCUR.
James R. Sherck, J., dissents.
[1] Paragraph 15a of the lease is patterned after the model lease in Section 880.606, Title 24 C.F.R., and reads:
 "If the Tenant does not submit the required recertification by the date specified in the Landlord's request, the Landlord may impose the following penalties. * * *.
 "(1) Require the Tenant to pay the higher, HUD-approved market rent for the unit.
 "(2) Implement any increase in rent resulting from the recertification processing without providing the 30-day notice otherwise require by Paragraph 4 of this Agreement."
[2] Generally, a landlord participating in a federally assisted housing program must provide a tenant with a thirty day notice of an increase in rent after recertification. Section 5-6(c), HUD Handbook. Section 5.7 of the HUD Handbook permits the landlord to increase the rent without the notification when the tenant delays the recertification process. Id., (referring to Paragraph 15a of the model lease)
[3] These assignments of error are:
 "The lower court abused its discretion in denying Owner's Judgment for possession of 1854 Westland Gardens, #201."
 "The lower court erred in finding that the new lease dated January 1, 1998, served to waive Owner's right to evict Madden for retro rent which accrued commencing in December, 1996."
 "The lower court erred in finding that Madden was not in default in the payment of rent."