QUINN ET AL., APPELLANTS, *v.*
CARDINAL FOODS, INC. ET AL.,
APPELLEES.

(No. 17-83-2 — Decided
August 16, 1984.)

*William E. Lang* and *Thomas E. Potts,* for appellant LaDonna Quinn.

*W. Lynn Swinger,* for appellant Helen Quinn.

*Daniel J. Gunsett,* for appellees.

MILLER, P.J. This is an appeal by plaintiffs, LaDonna and Helen Quinn, from a judgment entered by the Court of Common Pleas of Shelby County in favor of defendants, Cardinal Foods, Inc. et al., and dismissing plaintiffs' complaint.

In October 1973, plaintiffs entered into two leases with Dorsey's Inc. as lessee for a grocery store and an adjoining parking lot. Both of the leases contained the following provisions:

"Lessee does further covenant and agree with said Lessor as follows:
"* * *

"7. Lessee will not assign this Lease nor under-let said premises, nor any part thereof without the written consent of the said Lessor, it being understood and agreed that the Lessee, in the event of such authorized assignment or subletting, shall remain liable

for and guarantee the prompt payment of the rent herein called for to be paid during the term, or any extension thereof.

"8. Lessee represents that William R. Dorsey owns all of Lessee's stock, and that George M. Gaston intends to acquire 50% of said stock within a period of approximately three years. Lessee agrees that said individuals shall be the operators of the retail grocery store located on the premises, and that ownership of said stock, except as above set forth, shall not be changed without Lessor's written consent. In the event of violation of any of the terms of this Paragraph 8, Lessee and the individual guarantors of this Lease shall be jointly and severally liable to Lessor for liquidated damages in the amount of Four Thousand Dollars ($4,000.00). Said liquidated damages shall be cumulative and in addition to any other remedies herein provided.

"* * *

"The said Lessor hereby covenants and agrees as follows:

"2. Said Lessor hereby grants unto said Lessee the option to renew this Lease for an additional term of five (5) years, commencing on the expiration of the term aforesaid, and ending on the 31st day of August, 1978, for a monthly rental of Three Hundred Dollars ($300.00) per month, payable in advance, on the 1st day of each and every month, and under and subject to all the other covenants, provisions, terms, provisos, and conditions of this Lease; provided, however, that written notice of the exercise of such option shall be given by said Lessee to said Lessor at least one (1) year before the expiration of the term of this Lease, and provided further, that said option may be exercised only in the event that all rents have been fully paid, and all covenants, agreements, provisions, terms and conditions of this Lease on the part of the Lessee to be performed, kept and observed have been fully performed, kept and observed. * * *"

In 1977 a "Collateral Assignment of Leasehold Interest" was executed on behalf of Dorsey's, Inc. by William R. Dorsey, President, assigning its interest in the leases to Cardinal Foods, Inc. and, by agreement, Cardinal Foods, Inc., through Retail Food Services, assumed management of the grocery store which was the subject of one of the leases.

Edward Esping, president of Cardinal Foods, Inc., testified that he informed John Quinn, one of the lessors, at or near the time that Cardinal Foods, Inc. assumed the management of the store, "* * * that Cardinal was responsible for the entire management structure of that operation in Sidney including the financial management. In other words, we were paying the bills which he obviously knew because the checks were coming from Columbus."

William Dorsey, the sole shareholder of Dorsey's, Inc., testified that on June 6, 1980, he sold the stock of Dorsey's, Inc. to Cardinal Foods, Inc. due to financial crisis.

It was stipulated at trial that in June 1980, settlement negotiations commenced concerning the leases and continued until suit was filed. The evidence reveals that Dorsey advised plaintiffs that the stock transfer was contemplated and that Dorsey sought plaintiffs' consent to the transaction, but that such consent was never obtained, and that in May 1981, plaintiffs were advised in writing of the transfer of the stock.

It does not appear that Dorsey ever sought or obtained consent of plaintiffs to the assignment of the leases in 1977.

The evidence also indicates that from at least November 1980 through the date of trial plaintiffs accepted and deposited monthly rental checks from Dorsey's Foodtowne, Inc., without reservation other than the fact that plaintiffs on May 18, 1981, gave notice

to Cardinal Foods, Inc. to leave the premises.

Plaintiffs knew the checks were sent from Columbus, the corporate site of Cardinal Foods, Inc., but the evidence indicates that William Quinn, acting on plaintiffs' behalf, believed the checks were "Dorsey's Market" checks drawn on an account with a Sidney bank and the checks were in fact labeled Dorsey's Foodtowne, Inc. and were drawn on Bank One of Sidney, Ohio.

Plaintiffs' complaint demanded judgment against defendants for $8,000 and that it be determined that defendants have no rights of occupancy now or in the future, no rights of renewal of the lease and no right of first refusal to purchase the premises.

The trial court rendered its decision finding, among other things, that:

"It is apparent from the testimony in this proceeding that the Plaintiffs were aware that Cardinal Foods [et al.] were directly involved in the operations of the Supermarket as early as 1977, and were advised in May of 1980 of the prospective transfer of stock of William R. Dorsey to Defendant Cardinal Foods, and that thereafter, regularly, and. without protest, accepted Dorsey's rental checks. The Court finds they have waived their rights to declare a forfeiture for breach of the lease as a matter of law.

"It is the opinion of this Court that such waiver would extend to the options to renew, and also the right of first refusal to purchase."

The trial court's judgment entry was entered dismissing plaintiffs' complaint with prejudice.

Plaintiffs appeal from the judgment insofar as it establishes a right in defendants to renew the leases, the only assignment of error being:

"The court erred in holding that the defendant [sic] had a right to renew the leases."

In *Brokamp* v. *Linneman* (1923), 20 Ohio App. 199, the court said at 202:

"* * * A lessor on condition broken by lessee may elect to forfeit the lease, or to waive the forfeiture. Such election is necessary where a lease contains a re-entry or forfeiture clause. If after knowledge of the breach, the lessor, prior to taking any action to forfeit the lease, accepts rent from the lessee, or his assignee, which rent accrued after the breach, he waives the right of forfeiture.

"It is said in 1 Taylor on Landlord and Tenant, Section 287:

" 'The forfeiture of a lease by breach of any other condition may be waived, in the same manner as a forfeiture for non-payment of rent, or a notice to quit; for if the landlord subsequently does any act, with knowledge of the breach, which can be considered as an acknowledgment of a tenancy, still subsisting, he will be held to have waived the forfeiture.' * * *"

In *Finkbeiner* v. *Lutz* (1975), 44 Ohio App. 2d 223 [73 O.O.2d 238], the court considered a lease containing options for renewal as well as a provision prohibiting assignment of the lease without lessor's consent. The lessees failed to make timely payments of rent that were nevertheless belatedly accepted by lessors without qualification. On one occasion the lessors served notice on lessees that the lease had been forfeited due to lessees' failure to make a timely payment of rent whereupon lessees immediately tendered the late payment and gave lessors notice of their intention to exercise the option to renew the lease, both of which were rejected by lessors.

In affirming the lower court's judgment in favor of lessees and denying lessor's request for a writ of forcible entry and detainer, the court of appeals stated at 227-228:

"* * * First, the appellant's [sic] contention that they did not waive full performance of the contractural [sic] prerequisite to the exercise of the renewal option is without merit. The

lessees had never complied with the specific language in the lease dealing with renewal. Yet, the appellants did not object, continuing to permit the lessees full use of the property. We hold that in light of such acquiescence, the appellants are now estopped to deny that such prerequisites were waived in the past.

"Secondly, by virtue of having received corporate checks from 1964 through 1973 in payment of rent and taxes, the lessors were clearly put on notice that an assignment had been made of the rights of the leasehold, in contravention to the specific language in the agreement. We hold that the lessor is now estopped to object to such assignment after having knowingly permitted it to continue in existence for nine years.

"We hasten to note at this juncture that we fully agree with the appellees' position that there is nothing that will prevent the appellants from strictly enforcing the lease provisions in the future. We only hold that where, as here, a course of conduct is engaged in between the parties to a lease, which conduct is contrary to the specific provisions within the lease, such conduct will speak for itself, and the parties will be estopped from denying that conduct and its immediate and logical consequences. * * *"

Further in *Presidential Park Apartments* v. *Colston* (App. 1980), 17 O.O. 3d 220, the court determined that a landlord who, after serving on his tenant a three-day notice to leave the premises, accepts rent payments, has waived the three-day notice, his acceptance of rents being inconsistent with the notice to vacate.

Although plaintiffs contend that they accepted the rental payments only as a month-to-month tenancy until the parties could negotiate a new lease, we conclude that the trial court could conclude on the evidence before it that the payments were accepted in accordance with the terms of the lease and con-

stituted a waiver of the breach of conditions contained in the lease.

We further conclude that the trial court properly determined that the waiver applied to all conditions and provisions of the lease including the right to renew.

Finding no error of the trial court as assigned and argued, we affirm the trial court's judgment.

*Judgment affirmed.*

GUERNSEY and KEEFE, JJ., concur.

KEEFE, J., of the First Appellate District, sitting by assignment in the Third Appellate District.