JOURNAL ENTRY AND OPINION
Plaintiff-appellant Galaxy Development Limited Partnership (Galaxy) appeals the decision of the trial court finding in favor of Quadax, Inc. (Quadax). Galaxy argues the trial court erred when it found that certain provisions of the lease agreement were ambiguous and when it found that Galaxy waived its right to enforce a hold over provision.
On August 16, 1990 Galaxy signed a lease agreement with Billitron, Inc. whereby Billitron agreed to lease approximately 2,181 square feet of office space. The term of the lease was for five years from November 1, 1990 to October 31, 1995 at a monthly rate of $2,271.88. A year later, Billitron entered a second lease agreement with Galaxy for an additional 3,265 square feet of office space at a monthly rate of $4,653.90. The term of this lease was for four years from November 1, 1991 to October 31, 1995.
On July 6, 1995 Galaxy and Billitron executed an amendment to the first lease titled First Amendment to Lease and an amendment to the second lease titled Second Amendment to Lease (Amendments). Pursuant to the amendments, Galaxy acknowledged and consented to the assignment of the leases from Billitron to Quadax. The amendments extended the lease period for an extra year from October 31, 1995 to October 31, 1996. The amendments also provided Quadax with an option to extend the lease term beyond October 31, 1996 by providing written notice to Galaxy.
The leases expired on October 31, 1996 but Quadax remained in possession of the premises despite the fact that it did not provide Galaxy with written notice that it was going to remain in the premises beyond the lease terms.
Each lease contained identical provisions Sections 9.7, titled Holding Over. This section stipulated that if the lessee remained in possession of the premises after the expiration of the term, the lessee would be deemed a lessee at sufferance unless Galaxy notified the lessee in writing prior to the expiration of the term that it would consider the lessee's holding on an alternative basis. This section also stated the rent for the period of holdover tenancy would be at one-hundred and fifty percent (150%) of the highest rate payable for any portion of the term.
The record reveals that the leases expired on October 31, 1996 yet Quadax remained in possession of the premises until June 13, 1998 at which time it moved out of the premises. From October 31, 1996 until April 16, 1998, Quadax received and paid invoices from Galaxy for rent and escalation expenses. On April 16, 1998, Galaxy sent Quadax a letter notifying Quadax that it was a holdover tenant and that Galaxy intended to collect holdover rent at 150% of the normal rate. Galaxy sought holdover rent for the period of October 31, 1996 through June 13, 1998 which totaled $78,726.29.
On June 18, 1998 Galaxy filed a complaint maintaining Quadax's failure to pay holdover rent for the holdover tenancy was a willful breach of the leases. Galaxy prayed for compensatory damages in the amount of $78,726.29. A bench trial commenced on May 18, 1999. At the conclusion of the trial, the trial court found in favor of Quadax stating:
 Where the parties engage in conduct which is contrary to the provisions of the lease, such conduct will speak for itself, and the parties will be estopped from denying that conduct and its immediate and logical consequences. Finkbeiner v. Lutz (1975), 44 Ohio App.2d 223, syllabus. The evidence in this case shows that the Plaintiff and Defendant were in the process of renegotiating a new lease for the term beyond October 31, 1996. However, during the subsequent seventeen months, Plaintiff sent invoices for the rent due and accepted payments from Defendant for said rent without ever indicating that the amount was not in compliance with the holdover rent clause. This conduct created a reasonable expectation on Defendant's part that it was current in its rent obligation, and that Plaintiff had chosen to waive the enforcement of the 150% holdover rent. Until such time as Plaintiff notified Defendant that it was held to be holdover tenant and that the 150% holdover rent expected, the conduct of Plaintiff amounted to a waiver of the breach.
 IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the verdict is entered in favor of the Plaintiff for only the period of notice to Defendant, i.e. from April 16, 1998, through June 13, 1998.
Galaxy timely filed its notice of appeal from this decision. On appeal, Galaxy asserts two assignments of error. Because the assignments of error are interrelated we will address them together. They state as follows:
 THE PLAIN LANGUAGE OF THE NO WAIVER PROVISIONS CONTAINED IN 9.8 OF THE AGREEMENTS ARE CLEAR AND ENFORCEABLE.
 ENFORCEMENT OF THE NO WAIVER SECTIONS OF THE AGREEMENTS PREVENTS APPLICATION OF THE DOCTRINE OF WAIVER AS TO THE HOLDING OVER PROVISIONS.
Galaxy argues the trial court erred in finding the plain language of the No Waiver provisions in Section 9.8 of the leases was ambiguous and that the Holding Over rental provisions could be waived. Galaxy complains it is clear that the parties intention in drafting the waiver provision was that even if it accepted payment from Quadax with knowledge of the breach of covenant, the waiver would not preclude it from pursuing a remedy for that breach. To hold otherwise, Galaxy maintains, would contravene the manifest intent of the plain language which was negotiated by the parties. Consequently, Galaxy contends this court should interpret the anti-waiver provision as valid and reverse the decision of the trial court. Ed Wolf, Inc. v. National City Bank (Jan. 23, 1997), Cuyahoga App. No. 68898, unreported.
The waiver provision at issue is found in each of the leases at Section 9.8 and states as follows:
 No receipt of money by [Galaxy] from [Quadax] with knowledge of breach of any covenants of this lease, or after the termination hereof, or after the service of any notice, or after the commencement of any suit, or after final judgment for possession of said premises shall be deemed a waiver of such breach, nor shall it reinstate, continue or extend the terms of this lease or affect any such notice, demand or suit. No consent or waiver, express or implied, by [Galaxy] to or for any breach of any covenant, condition, or duty of [Quadax] shall be construed as a consent or waiver to or for any other breach of the same or any other covenant, condition or duty to be observed by [Quadax].
Quadax does not contend that it owes Galaxy holdover rent from April 16, 1998 to June 13, 1998. This is based on the letter sent from Galaxy to Quadax on April 16, 1998 where Galaxy notified Quadax that it intended to collect the holdover rent for the remainder of Quadax's tenancy. Thus, the period of time at issue is November 1, 1996 to April 16, 1998. The facts indicate that during this time period Galaxy sent Quadax invoices for rent and escalation expenses. However, at no time during this period did Galaxy attempt to collect holdover rent or notify Quadax of its intentions to collect holdover rent. The relationship between Galaxy and Quadax, as lessor and lessee, did not change when the lease term expired. In fact, during this period negotiations between the parties were transpiring as to a new lease. And it was only when the negotiations did not come to fruition, that Galaxy conveyed its intent to Quadax to collect holdover rent. This scenario demonstrates that Galaxy never intended to collect the holdover rent during the period at issue.
These facts support the trial court's holding that the No Waiver provision was ambiguous. The specific language which was ambiguous was with knowledge of a breach of any covenants of this lease. The trial court determined it was unclear as to which party had to have knowledge of the breach. Essentially, this means that once a breach of a covenant in the lease occurred, a party had to notify the other party of the breach. Thus, unless notification occurred, the receipt of money amounted to a waiver of the breach. There was no notification of a breach prior to or during the period from November 1, 1996 to April 16, 1998. As shown above, Galaxy continued to accept money from Quadax after the term of the lease had expired and never notified Quadax of a breach until April 16, 1998. Neither party expressed knowledge of a breach of the lease to the other and their conduct demonstrated there was no recognition of a breach until Galaxy sent Quadax the letter on April 16, 1998. Accordingly, the trial court did not err in finding the language of the No Waiver provision ambiguous as it was unclear which party had to have knowledge of the breach for the No Waiver provision to apply.
A party may voluntarily relinquish a known right through words or by conduct. State ex rel. Ford v. Cleveland Bd. of Edn. (1943),141 Ohio St. 124. A waiver is a voluntary relinquishment of a known right, with the intent to do so with full knowledge of all the facts. Kiefer Mach. Co. v. Niemes (1948), 82 Ohio App. 310.
It may be made by express words or by conduct which renders impossible a performance by the other party, or which seems to dispense with complete performance at a time when the obligor might fully perform. City of North Olmsted v. Eliza Jennings (1993), 91 Ohio App.3d 173 quoting List Son Co. v. Chase (1909), 80 Ohio St. 42, 49.
A waiver is something akin to estoppel. It may be enforced by the person having a duty to perform, who has changed his position as a result of the waiver. Andrews v. Teachers Retirement Sys. (1980),62 Ohio St.2d 202, 205. The party seeking to prove the waiver must do so by showing a clear, unequivocal, decisive act by the other party of such a purpose it amounts to an estoppel on that party's part. White Co. v. Canton Transp. Co. (1936), 131 Ohio St. 190, 198-199.
In the present case, Quadax was in breach of the lease because it remained in possession of the premises but did not notify Galaxy in writing that it wanted to renew the lease. This entitled Galaxy to charge Quadax holdover rent for the period of time that Quadax remained on the premises after expiration of the lease. Galaxy did not charge holdover rent. Instead, Galaxy continued to accept rent payments which were the same amount as before the expiration. Galaxy, by its actions, simply extended the lease on its original terms for the period of November 1, 1996 to April 16, 1998.
In Quinn v. Cardinal (1984), 20 Ohio App.3d 194, a lessor attempted to enforce the forfeiture of a lease based on a breach of the lease where the lessee failed to inform the lessor the lease was being assigned to another party. However, the record demonstrated that the lessor was aware of the assignment and that the lessor continued to accept rent payments from this other party. The court held:
 Although plaintiffs contend that they accepted the rental payments only as a month-to-month tenancy until the parties could negotiate a new lease, we conclude that the trial court could conclude on the evidence before it that the payments were accepted in accordance with the terms of the lease and constituted a waiver of the breach of conditions contained in the lease.
 We further conclude that the trial court properly determined that the waiver applied to all conditions and provisions of the lease including the right to renew.
Moreover, in Finkbeiner v. Lutz (1975), 44 Ohio App.2d 223, the court considered a lease containing options for renewal as well as a provision prohibiting assignment of the lease without the lessor's consent. The lessees failed to make timely payments of rent that were nevertheless belatedly accepted by lessors without qualification. The court held that where a course of conduct is engaged in between the parties to a lease, which conduct is contrary to the specific provisions within the lease, such conduct will speak for itself, and the parties will be estopped from denying that conduct and its immediate and logical consequences. See, also, Waterville Gas Co. v. Mason (1994), 93 Ohio App.3d 798 (continual acceptance of late payments constitutes a waiver or equitable estoppel).
As to the case Galaxy cites, Ed Wolf Inc., we find it distinguishable from the facts of the present case. In Ed Wolf, the appellant and appellee entered into a loan agreement that contained a provision which allowed appellee terminate the agreement without notice to the appellant upon a continuing default by appellant. This court held the provision at issue was not ambiguous, which is different from the present case, and that [P]ast acceptance of late payments does not constitute a waiver of the creditor's right to accelerate on a loan following a subsequent default where the loan document contains an anti-waiver provision. In the present case, notice was not provided to Quadax that it was in breach of the lease. This is different from Ed Wolf, Inc. where the appellee put the appellant on notice that it was in default of the loan even though the provision at issue stated notice of default was unnecessary to terminate the agreement. Moreover, the conduct of both the appellee and appellant, in contrast to the instant parties, demonstrated they were both aware that appellant was in default. Ed Wolf, Inc. is distinguishable from the instant case as to notice and knowledge of the parties and as to the conduct of the parties.
Based on the above analysis, we find the trial court did not err in determining the No Waiver provision was ambiguous. In addition, we find that Galaxy waived its right to collect the holdover rent from Quadax by continuing to accept the original rental payments after expiration of the lease. Therefore, the trial court did not err in holding Galaxy was prohibited from collecting holdover rent for the period of November 1, 1996 to April 16, 1998. Accordingly, Galaxy's two assignment of error are overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court direct ing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., ANNE L. KILBANE, J., CONCUR.
 _____________________________________ JOHN T. PATTON, PRESIDING JUDGE