## CUYAHOGA METROPOLITAN HOUSING AUTHORITY

### v.

### HAIRSTON.

2003-Ohio-3005.]

Cleveland Municipal Court,
Housing Division, Cuyahoga County, Ohio.

No. 02–CVG–05582.

Decided April 22, 2003.

William H. Armstrong, for plaintiff.

Jennifer Stoller, for defendant.

---

RAYMOND L. PIANKA, Judge.

{¶ 1} This case is before the court on the plaintiff Cuyahoga Metropolitan Housing Authority's ("CMHA") objections to the magistrate's conclusions of law. For the following reasons, plaintiff CMHA's objections are overruled, and the magistrate's decision is affirmed.

{¶ 2} The facts in this case appear largely to be undisputed. Hairston is a tenant in a public housing unit managed by CMHA On or about May 18, 2001, CMHA police discovered marijuana in Hairston's unit. CMHA, while aware of the police activity, continued to accept Hairston's rent. CMHA accepted Hairston's rent for at least seven months after it became aware of the breach, until the notice of termination was served.

{¶ 3} The magistrate found that CMHA waived Hairston's breach of the lease by continuing to accept rent after becoming aware of the breach. Further, the magistrate found that the equitable considerations weighed in favor of Hairston. CMHA subsequently filed its timely objections to the magistrate's decision.

{¶ 4} In its objections, CMHA argues that the defense of waiver is not available to Hairston, as the lease provision breached was established by the state legislature as a matter of public policy, and waiver would violate public policy. Hairston argues that the cases cited by CMHA are inapplicable, as CMHA had discretion in this situation not to evict Hairston.

{¶ 5} In general, a landlord waives the right to terminate a tenancy due to a breach of the lease if, after learning of the breach, he takes action inconsistent with the termination of the tenancy. *Brokamp v. Linneman* (1923), 20 Ohio App. 199, 202, 153 N.E. 130 (Hamilton Cty.). This principle is not applicable only to situations involving nonpayment of rent; waiver may be deemed to have occurred in cases involving the breach of a non-monetary obligation. *Quinn v. Cardinal Foods, Inc.* (1984), 20 Ohio App.3d 194, 20 OBR 239, 485 N.E.2d 741 (Shelby Cty.).

{¶ 6} Plaintiff, in its objections, acknowledges the general legal principle set forth above. Plaintiff, however, argues that this general principle is inapplicable in this case, as the lease provision violated by the defendant relates to conduct that the legislature has established is against public policy. Therefore, plaintiff argues, enforcement of waiver of the violation would violate public policy.

{¶ 7} The court is not persuaded by the plaintiff's argument.

{¶ 8} Plaintiff relies upon *Pinter v. Hantzsche* (App.1937), 26 Ohio Law Abs. 378, 1937 WL 4398 (Summit Cty.), and *Bredwell v. Carter* (1948), 83 Ohio App. 296, 52 Ohio Law Abs. 138, 38 O.O. 383, 82 N.E.2d 760 (Clermont Cty.). In both cases, the courts of appeals determined that the defendants were operating an illegal gambling business at the premises. The courts determined that acceptance of rent by the landlord after becoming aware of the breach did not constitute waiver of the breach. The Courts relied upon General Code Section 5972, which provided, "When premises are occupied for gaming or lottery purposes, the lease or agreement under which they so occupied shall be absolutely void at the instance of the lessor, who may at any time obtain possession thereof by civil action, or by action of forcible detainer before a justice of the peace." Plaintiff argues by analogy that the federal "One Strike You're Out" policy, along with state and city legislation, establishes a similar public policy mandating eviction for tenants found to have participated in drug activity. Therefore, plaintiff argues, application of the waiver principle would be against public policy.

{¶ 9} Defendant, in response, argues that the federal regulations do not make eviction a certainty but rather an option that may be exercised by the authority. Defendant argues that the lease simply provides that illegal drug activity may constitute grounds for an eviction, but that eviction is only one option available to a public housing authority ("PHA").

{¶ 10} First, the court is persuaded that plaintiff's argument is based upon a faulty premise. The federal regulations require that the lease provide that the PHA *may* evict for criminal drug activity—they do not mandate eviction.[1] Further, the regulations specifically contemplate that the PHA will consider a number of factors in deciding *whether* to file an eviction action against the tenant.[2] Certainly the court would agree that the legislature has established a

---

1. "The lease must provide that drug-related criminal activity engaged in on or off the premises by any tenant, member of the tenant's household or guest, and any such activity engaged in on * * * the premises by any other person under the tenant's control, is grounds for the PHA to terminate tenancy. In addition, the lease must provide that a PHA may evict a family when the PHA determines that a household member is illegally using a drug or when the PHA determines that a pattern of illegal use of a drug interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents." Section 966.4($l$)(5)(i)(B), Title 24, C.F.R. (revised in 66 Fed.Reg. 28775, 28803) (May 24, 2001).

2. "In a manner consistent with such policies, procedures and practices, the PHA may consider all circumstances relevant to a particular case such as the seriousness of the offending action, the extent of participation by the leaseholder in the offending action, the effects that the eviction would have on family members not involved in the offending activity and the extent to which the leaseholder has shown personal responsibility and has taken all reasonable steps to prevent or mitigate the offending action." Section 966.4($l$)(5)(vii)(B), Title 24, C.F.R. (revised in 66 Fed.Reg. 28775, 28803) (May 24, 2001).

public policy against illegal drug use in public housing. However, given the discretion that the regulations vest in PHAs to consider the individual situation when determining whether to evict the tenant,[3] the court cannot conclude that enforcing the legal concept of waiver against CMHA is violative of public policy.[4]

{¶ 11} Moreover, the court is not persuaded that, even assuming the validity of plaintiff's premise, plaintiff's conduct would not constitute a waiver. The requirement that a landlord evict a tenant under certain circumstances does not, to this court, act as license for the landlord to violate the clearly established eviction procedure. To permit plaintiff to accept rent for several months, even a year or more, without putting the tenant on notice of the landlord's determination of a breach, then commence an eviction action against the tenant would, this court is persuaded, be equally contrary to public policy. A landlord in this situation had the power to commence the eviction action but chose instead to engage in conduct that ratified the tenancy. Under these circumstances, the court cannot conclude that the defense of waiver is unavailable to the tenant.

{¶ 12} In this case, the legislature has seen fit to allow plaintiff and defendant to negotiate other solutions in the event of an episode of drug activity at rental premises. Moreover, CMHA acted knowingly in accepting defendant's rent. In light of these factors, it is not clear that public policy requires eviction. Nor is the court persuaded that the magistrate improperly determined that plaintiff waived the breach by continuing to accept rent.

{¶ 13} For the foregoing reasons, plaintiff's objections to the magistrate's decision are overruled. This court's prior decision is affirmed.

Decision affirmed.

---

3. Indeed, the language of the letter from Secretary of Housing and Urban Development to the public housing directors, a copy of which defendant attaches to its brief, mandates consideration of all factors, in the PHA's decision whether to file an eviction action for illegal drug use:

"The enforcement of this [household responsibility] clause is left to the discretion of each public housing agency; however, I would like to urge you, as public housing administrators, to be guided by compassion and common sense in responding to cases involving the use of illegal drugs. Consider the seriousness of the offense and how it might impact other family members.

"Eviction should be the last option explored, after all others have been exhausted."

4. Plaintiff argues that R.C. 5321.04 and Cleveland Codified Ordinance 90–96 also mandate eviction for tenants participating in illegal drug activity. The court notes that this action was not brought under either provision, but, rather, as an action for breach of the tenant's lease.