[Cite as *Telecom Acquisition Corp. I v. Lucic Ents., Inc.*, 2012-Ohio-472.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95951**

# TELECOM ACQUISITION CORP. I, INC.

PLAINTIFF-APPELLANT

vs.

# LUCIC ENTERPRISES INC., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
**AFFIRMED**

Civil Appeal from the
Cleveland Municipal Court
Case No. 09-CVG-016833

**BEFORE:** Sweeney, J., Stewart, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** February 9, 2012

**ATTORNEY FOR APPELLANT**

Randy J. Hart, Esq.
23600 Commerce Park
Beachwood, Ohio 44122

**ATTORNEY FOR APPELLEES**

Charles P. Royer, Esq.
McCarthy, Lebit, Crystal & Liffman Co.
101 West Prospect Avenue, Suite 1800
Cleveland, Ohio 44115

JAMES J. SWEENEY, J.:

{¶ 1} Plaintiff-appellant, Telecom Acquisition Corp. I, Inc. ("Telecom") appeals the judgment entry and order of the Cleveland Municipal Housing Court that denied its summary judgment motion and granted defendant-appellee's, Lucic Enterprises, Inc. ("Lucic"), motion for summary judgment on its request for declaratory judgment that it properly exercised a renewal option contained in a commercial lease agreement relating to these parties and property located at 1204 Old River Road, Cleveland, Ohio 44113 (the "Property"). Telecom contends that the housing court erred and should

have granted its motion for summary judgment on its complaint to evict Lucic from the Property on various grounds. For the reasons that follow, we affirm.

{¶ 2} The facts are straight-forward and not in dispute. On September 8, 2004, 1220 Old River Road Company, as "Lessor," entered into a Lease Agreement concerning the Property with KAOS, INC. ("KAOS"), as "Lessee," and James Gerrick, as the "Guarantor." James Gerrick executed the Lease Agreement in his capacity as President of KAOS, the Lessee, and also in his individual capacity as the Guarantor. On January 17, 2006, Gerrick, again in his dual capacities, executed an Assignment of Lease, which provided:

> The undersigned, Lessee/Assignor, KAOS IN THE FLATS, INC, an Ohio Corporation, and JAMES S. GERRICK,s [sic] tenants of the premises located at 1204 Old River Rd., Cleveland, Cuyahoga County, Ohio 44113 pursuant to a lease executed on or about September 8, 2004 by and between Assignor/Lessee as Tenants and 1220 Old River Road Company, an Ohio Partnership, as Lessor, for value received, hereby assigns all its rights, title and interests in the foregoing described lease to Lucic Enterprises, Inc. and [sic] Ohio Corporation; Kaos in the Flats, Inc. acknowledges that this assignment does not automatically release it from its obligations pursuant to subject lease until said lease expiration date, or at such time as 1220 Old River Road Company and/or its Successor in interest executes a new lease with Lucic Enterprises, Inc. for subject premises and/or until Lessor and/or Successors in interests otherwise release Assignor from same.

{¶ 3} At some point, Telecom purchased assets, including the Property, from the Group Group, an affiliate of 1220 Old River Road Company. Then on April 14, 2006, Telecom executed its consent to the Assignment of the Lease by KAOS and Gerrick to Lucic. The consent provided in its entirety as follows:

The undersigned Lessor/Landlord pursuant to the above described lease, 1220 Old River Road Company, an Ohio Partnership and or its successors in interests, hereby consents to the above assignment of subject lease as described herein. See copy of original lease attached hereto and incorporated herein as if fully rewritten.

{¶ 4} Lucic and Valentina Lucic executed the same document signifying acceptance of the assignment of the lease and explicitly assuming "the responsibilities of tenant/lessee thereto"; the record illustrates that the Property was operated as a bar and over the years had incurred certain tax liabilities that became the responsibility of each successive owner of the Property. This complicated KAOS' ability to transfer the required liquor permits to Lucic; however, the parties were able to make arrangements for the continued lawful sale of liquor on the Property through a Management Agreement negotiated "pursuant to the purchase by Lucics of the permit premises business assets from KAOS." Lucic's acceptance of the assignment incorporated this by indicating the contingency of being able to obtain the necessary permits.

{¶ 5} From 2006 to 2009, Lucic made timely payments to Telecom for the rental amounts due under the Lease Agreement, which Telecom accepted without objection. There is no dispute that Lucic occupied the Property and made significant improvements to it over this time period. The evidence indicates Lucic expended at least $210,000.00 improving the Property. During

this time period, Lucic made efforts to have the liquor permits transferred to its name, however, this could not be accomplished until Lucic was able to resolve the outstanding tax liabilities on the Property. This was accomplished and documented by correspondence from the Ohio Department of Taxation dated July 14, 2009, which indicated it had "notified the Division of Liquor Control that they may proceed with the permit transfer." The permit transfer was completed by August 7, 2009.

{¶ 6} Prior to that time, Lucic sent Telecom certified notice on May 5, 2009, of its intent to exercise the renewal option under the Lease Agreement. The Option to Renew is set forth in Article II of the Lease Agreement and provides:

> Provided that Lessee has fully complied with all terms and provisions herein contained, Lessor hereby grants Lessee the right and option to renew this Lease for one additional term of five (5) years, commencing September 1, 2009, and ending on the 31st day of August, 2014, upon the same terms and provisions set forth herein, * * * The option granted herein must be exercised by written notice to Lessor not less than ninety (90) days prior to the expiration of the initial term hereof. Failure to timely exercise such option shall result in said option being null and void; time being of the essence.

{¶ 7} Telecom refused to renew the Lease, giving rise to this action, which commenced with Telecom's complaint to evict Lucic from the Property once the initial term of the Lease Agreement had expired.

**{¶ 8}** The trial court resolved the matter in favor of Lucic and against Telecom and it is from this decision that Telecom has appealed. Additional facts and contractual provisions will be set forth in connection with the assigned errors to which they are relevant.

### Assignment of Error 1

The Trial Court erred in finding that Appellee was a tenant under the Lease with standing to exercise an option to renew contained in the Lease, where the undisputed evidence showed that Appellee had failed to satisfy a condition precedent to its becoming a tenant under the Lease.

### Assignment of Error 2

The Trial Court erred in holding that the condition precedent in Appellee's acceptance of the Assignment of the Lease was not for the benefit of Appellant and that Appellant could not enforce its terms.

### Assignment of Error 3

The Trial Court erred in holding that notice of lease violations was required under the Lease even where Appellant did not allege a violation of the Lease and none was required to be alleged.

**{¶ 9}** In these assigned errors, Telecom asserts that its eviction complaint was premised upon the alleged untimely fulfillment of a "condition precedent" that it deemed necessary to vest Lucic with any rights or interests as the Lessee under the Lease Agreement. To that end, and in these errors Telecom asserts that it was and is not claiming that Lucic ever "defaulted" under the Lease Agreement and therefore, Telecom reasons it did not have to

provide notice of any default before seeking to evict Lucic from the Property at the expiration of the initial Lease term.

{¶ 10} Appellate review of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998), as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274 (1996).

{¶ 11} The "construction of a written contract is a matter of law." *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶9. Ohio courts "presume that the intent of the parties to a contract is within the language used in the written instrument. If [courts] are able to determine the intent of the parties from the plain language of the agreement, then there is no need to interpret the contract." *Id.*

{¶ 12} Telecom asserts that Lucic had no standing to renew the Lease Agreement because in Telecom's opinion, Lucic did not become the "Lessee"

until the liquor permits were transferred. While Telecom acknowledges this occurred prior to the expiration of the Lease Agreement, it contends it was not within the time frame established for exercising the renewal option — 90 days prior to the expiration of the Lease. Essentially, Telecom argues that the Assignment of the Lease Agreement was invalid until August 7, 2009. This interpretation is not supported by the plain terms of the Assignment or Telecom's consent to it, nor is it supported by the course of dealing of the parties.

{¶ 13} In this case, it is undisputed that KAOS and Gerrick executed an Assignment of Lease to transfer all of its "right, title, and interest" in the Lease to Lucic. Telecom signified its consent to this assignment by executing the Consent provision on April 14, 2006 and Lucic also accepted the assignment by signing the Acceptance provision. That particular provision included that Lucic's acceptance was contingent upon "Lucics [sic] and or nominee" obtaining the issuance of liquor permits "pursuant to the purchase by Lucics [sic] of the permit premises business assets from KAOS, Assignor." There is no set time frame nor any provision that said permits must be obtained prior to the expiration of the Lease term. There is no language that Telecom's consent to the Assignment was contingent on anything.

{¶ 14} Coincidentally, Telecom was not a party to the original Lease Agreement either but that did not prevent it from asserting the rights of the

Lessor contained in it. Telecom did not draft the Assignment of Lease but only signified its consent to it. The contingency clause in the acceptance paragraph was solely for the benefit of Lucic, which Telecom readily concedes. The contingency did not prevent Lucic from being obligated under the Lease terms upon its execution but instead operated to discharge Lucic of any continued obligations as the Lessee in the event that the parties were unsuccessful in transferring the liquor permits. Clearly, Telecom was not a beneficiary of this contingency, intended or otherwise. Also the contingency did not leave Telecom without any recourse or tenant in the eventuality that the liquor permits were not transferred to Lucic. In that case, and by the terms of the Assignment, KAOS and Gerrick remained obligated under the Lease Agreement — even into the renewal period if it was exercised by Lucic. There are no provisions in the Assignment, Consent or Acceptance that would provide otherwise or lead to an opposite conclusion.

{¶ 15} Telecom accepted lease payments from Lucic even though Lucic had apparently not been able to obtain liquor permits for the Property until sometime in August of 2009. It is contrary to the plain terms of the assignment itself and Telecom's consent to it to conclude that Lucic needed to obtain the liquor permits prior to the expiration of the lease term in order to avail itself of the rights, including the renewal provisions, contained in the Lease. By virtue of the assignment, Lucic enjoyed all of the rights, title, and

interest of the Lessee under the Lease Agreement, including the renewal option. Indeed, Telecom made no protest that Lucic had no standing, interest, or right to make the substantial improvements to Telecom's rental property that were completed during its occupancy as the assigned lessee. Contrary to Telecom's arguments, Lucic did explicity assume the "responsibilities of the tenant/lessee thereto"; that there was a contingency upon which the obligations of the Lessee could revert back to KAOS and Gerrick is not relevant or detrimental to Telecom's interests — either way Telecom had a party liable to it under the terms of the Lease Agreement.

{¶ 16} The facts establish that Lucic complied with the plain terms of the Assignment and demonstrated its acceptance of the lease terms by making the lease payments. If the Assignment was invalid or not effective until transfer of liquor permits, then Telecom had no basis to accept lease payments from Lucic until Lucic obtained a liquor permit pursuant to the purchase of KAOS' business assets. Yet, Telecom did accept rental payments from Lucic, regularly and without protest about the status of the liquor permits. Telecom did not object until Lucic sent notice of its intent to renew the Lease. Telecom continued to accept lease payments from Lucic even after it had commenced the underlying eviction proceedings and until the municipal court ordered the payments to be deposited with the Clerk of Courts.

{¶ 17} By virtue of the unconditional assignment and consent, Lucic had standing to exercise the option to renew under the Lease Agreement and the trial court did not err in this regard. The first, second, and third assignments of error are overruled.

Assignment of Error 4

> The Trial Court erred in holding that Appellant's acceptance of rent acted as a waiver of its right to seek eviction for noncompliance with the Lease even where such noncompliance was unrelated to the payment of rent.

{¶ 18} It is Telecom's position that its acceptance of rental payments from Lucic for a three year period did not waive its ability to evict Lucic, the tenant who was operating in the Property, at the expiration of the Lease Agreement. This argument would require us to ignore the assignment by KAOS and Gerrick to Lucic and Telecom's consent to it.

{¶ 19} Even if we concluded that Lucic was not the "Lessee" under the Lease Agreement until the successful transfer of the liquor permits, which we do not, the doctrines of estoppel and waiver preclude Telecom from asserting this position with respect to the renewal provision under these factual circumstances.

{¶ 20} Where the evidence establishes that the Lessor is aware of an alleged invalid or improper assignment of a lease or an alleged breach thereof but regularly, and without protest, continues to accept rental checks, the

lessor waives their rights to declare forfeiture for breach as a matter of law. *Quinn v. Cardinal Foods Inc.*, 20 Ohio App.3d 194, 196, 485 N.E.2d 741 (3rd Dist.1984). Such waiver would extend to the options to renew. *Id.*; *see also, Finkbeiner v. Lutz,* 44 Ohio App.2d 223, 227-228, 337 N.E.2d 655 (1st Dist.1975) ("by virtue of having received corporate checks from 1964 through 1973 in payment of rent and taxes, the lessors were clearly put on notice that an assignment had been made of the rights of the leasehold, in contravention to the specific language in the agreement. We hold that the lessor is now estopped to object to such assignment after having knowingly permitted it to continue in existence for nine years.")

{¶ 21} The fourth assignment of error is overruled.


## Assignment of Error 5

The Trial Court erred in holding that the option to renew could be exercised even where the tenant is not in full compliance with all provisions of the Lease.

{¶ 22} Alternatively, Telecom maintains that even if Lucic was the Lessee under the Lease Agreement, it was not entitled to exercise the option to renew for various alleged defaults. Specifically, Telecom asserts that Gerrick's bankruptcy was not in compliance with the terms of the Lease. However, a review of the applicable provision and the defined terms of the Lease Agreement reflect that this was not the case. The Lease Agreement

defines the "Lessee" as KAOS INC. and separately defines James Gerrick as the "Guarantor." With respect to this issue, the parties refer to the following provisions:

Article XVI - Default by Lessee

* * *
B. Any voluntary or involuntary petition or similar pleading under any section or sections of any bankruptcy act shall be filed by or against Lessee, or any voluntary or involuntary proceedings in any court or tribunal shall be instituted to declare Lessee insolvent or unable to pay Lessee's debts, and the same shall not be dismissed or discharged with in thirty (30) days thereafter; or
* * *

Another provision provides:

Article XXXIX - Guarantor

The undersigned Guarantor hereby personally and unconditionally guarantees to Lessor, its successors and assigns, the full and complete performance by Lessee of all obligations of Lessee under this [sic] terms of this Lease Agreement as if Guarantor was named as 'Lessee' herein.

{¶ 23} The above-quoted default provision applies to explicitly to KAOS, the only identified "Lessee" in the Lease. The Guarantor clause does not relate or provide that a personal bankruptcy by the Guarantor will operate as a default under the Lease. Instead, the clause, by its terms, guarantees performance of the Lessee's obligations under the Lease. The Lease could have, but did not, include the bankruptcy of the guarantor as a default.

Therefore, this was not a valid basis for Telecom to refuse to honor the renewal provision.

{¶ 24} Next, Telecom asserts that neither KAOS nor Lucic were in compliance with the insurance and security deposit terms of the Lease Agreement when Lucic exercised the option to renew. Lucic responds that Telecom failed to give a written notice of default concerning these issues prior to the time it exercised the option to extend the Lease, and could not use them as a basis to deny renewal.

{¶ 25} Article XVI of the Lease provides:

D.   Lessee * * * shall fail, neglect or refuse to keep and perform any of the other covenants, conditions, stipulations or agreements herein contained, covenanted or agreed to be kept or performed by Lessee, and if any such default shall continue for a period of more than thirty (30) days after notice thereof given in writing to Lessee by Lessor * * *.

2.   * * * Lessee shall in no event be charged with default in the performance of any of its obligations hereunder unless and until Lessee shall have failed to perform such obligations after notice to Lessee by Lessor properly specifying wherein Lessee has failed to perform any such obligations.

{¶ 26} Lucic also points out that Telecom's property manager testified that Lucic did provide him with a current certificate of insurance that named Telecom as an additional insured. To his knowledge, no one from Telecom had advised Lucic in writing that Telecom considered the insurance unacceptable. Because Telecom did not comply with the terms of the Lease by affording

Lucic with written notice of a perceived noncompliance, Lucic was not afforded its right under the Lease to challenge or cure it. Under these circumstances, Telecom could not refuse to honor the renewal option based on items of noncompliance for which it provided Lucic no notice. This assignment of error is overruled.

Judgment affirmed.

**It** is ordered that appellees recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
JAMES J. SWEENEY, JUDGE

KENNETH A. ROCCO, J., CONCURS
MELODY J. STEWART, P.J., DISSENTS (SEE SEPARATE DISSENTING OPINION ATTACHED)

MELODY J. STEWART, P.J., DISSENTING:

{¶ 27} The lease assignment contained the condition precedent that it was contingent upon Lucic obtaining a liquor permit for the premises.

Telecom revoked the lease before Lucic obtained the liquor permit, so the assignment was never completed. KAOS remained in possession of the premises, not Lucic. It follows that Lucic was not in privity of contract with Telecom, so Telecom was entitled to terminate the lease with KAOS. I therefore dissent.

I

{¶ 28} When a lease is assigned, the assignee takes over all obligations contained in the initial contract between the landlord and the lessee. The "lessee is not discharged from his obligations under such lease, [but] the assignee assumes the position of principal obligor for the performance of the covenants of the lease, and the lessee becomes his surety for such performance." See *Gholson v. Savin*, 137 Ohio St. 551, 31 N.E.2d 858 (1941), paragraph two of the syllabus.

{¶ 29} Lucic agreed to accept an assignment of KAOS's rights under the lease, but only on condition that Lucic obtain a liquor permit for the premises.

> A condition precedent * * * is one which is to be performed before the agreement of the parties becomes operative. A condition precedent calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which its obligation is made to depend. *Mumaw v. Western & Southern Life Ins. Co.*, 97 Ohio St. 1, 119 N.E. 132 (1917), syllabus.

{¶ 30} It is undisputed that at the time Telecom informed Lucic that it was terminating the lease in May 2009, Lucic had not yet obtained a liquor

permit in its name nor had KAOS attempted to renew the lease. The necessary precondition for Lucic accepting the assignment did not occur, so as a matter of law, Lucic was not an assignee when the option to renew the lease expired. Lucic thus lacked the contractual right to exercise the option to renew the lease.

{¶ 31} Although the trial court recognized that a precondition for assignment did indeed exist, it found the precondition immaterial, reasoning that the precondition was not made for Telecom's benefit, but to protect Lucic from being liable on the assignment if the liquor permit was denied. I would find that this conclusion was erroneous. Regardless of whether the parties intended for Telecom to derive any benefit from the precondition, no assignment occurred as a matter of law. The important consequence of this failure was that Lucic had no privity of contract with Telecom. *Sandstone Corp. v. Columbia Gas Transm. Corp.*, 10th Dist. No. 88AP-292, 1989 WL 43201. KAOS thus remained at all times liable on the lease and subject to the terms contained in the lease, including the duty to make a timely renewal of the lease.

## II

{¶ 32} Lucic's lack of privity of contract is important because it directly affects the court's finding that Telecom waived the right to deny Lucic's

attempt to renew the option on the lease because it accepted rent from Lucic for three years during which period Lucic did not have a valid liquor permit.

{¶ 33} Waiver is the voluntary relinquishment of a known right. *White Co. v. Canton Transp. Co.*, 131 Ohio St. 190, 2 N.E.2d 501 (1936), paragraph one of the syllabus. The party asserting the defense of waiver bears the burden of proving by a preponderance of the evidence "a clear, unequivocal, decisive act of the party against whom the waiver is asserted, showing such purpose or acts amounting to an estoppel on his part." *Id.* at paragraph four of the syllabus.

{¶ 34} Lucic was not an assignee during the lease renewal option period. Neither was it technically a subtenant. The lease required Telecom's approval for either an assignment or a sublease, and Telecom only gave permission for an assignment, not a sublease. With the failure of the condition precedent at the option renewal period, no assignment occurred so there was no privity of contract between Telecom and Lucic. Lucic had no right to enforce any part of the agreement between the primary lessee and the landlord. *Stern v. Taft*, 49 Ohio App.2d 405, 361 N.E.2d 279 (1st Dist.1976). KAOS remained at all times liable on the lease to Telecom. *Crowe v. Riley*, 63 Ohio St. 1, 9, 57 N.E. 956 (1900).

{¶ 35} In *767 Third Ave., LLC v. Kadem Capital Mgmt., Inc.*, 303 A.D.2d 199, 756 N.Y.S.2d 539 (2003), the New York Supreme Court, Appellate

Division, First Department, considered very similar facts concerning the assertion of equitable defenses against a landlord by a party not in privity of a lease. The landlord's tenant leased certain office space. A third party who also leased office space in the building wished to occupy the tenant's space. The tenant and third party entered into an "enforceable agreement in principal [sic]" under which the tenant would surrender or assign its lease and the third party would lease another office space from the landlord, pay to improve it, and provide it free of charge for the tenant. The landlord was aware of this agreement but not a party to it, although the landlord gave approval for the third party's remodeling plans and collected rent from the third party attributable to the space formerly occupied by the tenant. At no point, however, did the parties consummate an assignment or a sublease, nor did the landlord consent in writing to this arrangement as required by the lease. When the landlord sought to evict the third party, the third party asserted that the landlord waived the prohibition against subletting and should have been estopped from asserting that prohibition. The Appellate Division held that "there never was a sublease to which Landlord could consent, in writing or otherwise, and, there being no approved sublease, the landlord is under no obligation to recognize [the third party's] occupancy." *Id.* at 200 (internal quotations and citations omitted). Without a valid

contract, the third party lacked privity to assert equitable defenses of waiver and estoppel. *Id.*

{¶ 36} The analysis in *767 Third Avenue* applies with equal force to this case. While Telecom knowingly accepted rent from Lucic after the lease option renewal period expired, it did not waive its rights under the lease. There being no privity of contract between Telecom and Lucic at the time Telecom filed this forcible entry and detainer action, Telecom was within its rights to enforce the lease terms and find that KAOS did not properly exercise the renewal option. Lucic's attempt to do the same was a nullity.

{¶ 37} I would therefore find that the the court erred by refusing to grant Telecom's complaint in forcible entry and detainer.