T. P. SILER, Adm'r, v. T. R. GRAY, Adm'r.

*Executors and Administrators, when liable for contracts of deceased, and when not.*

The general rule—that a personal representative of a deceased person is bound to perform all his contracts, or make compensation out of the estate in case of non-performance—is subject to the exception that where such contract requires something to be done by the contracting party in person, as here, and he die before performance, the personal representative is not liable to an action for a breach of the same occasioned by his death.

CIVIL ACTION tried at Fall Term, 1881, of MACON Superior Court, befor *McKoy, J.*

On the 11th day of October, 1869, Jesse R. Siler, being the owner of a certain tract of land, conveyed the same in fee to his son Leon F. Siler, the two, at the same time entering into a contract of which the following is a copy:

"This agreement made and entered into this the 11th October, 1869, between J. R. Siler of the first part, and L. F. Siler of the second, both of Macon county, in the state of North Carolina, witnesseth, that for and in consideration of L. F. Siler's administering to the comfort of J. R. Siler and his wife, H. D. Siler, during their lives and seeing that they are well provided for, and also in consideration of L. F. Siler's consent that J. R. and H. D. Siler shall have a life estate and joint occupancy with him in J. R. Siler's home tract of land, surveyed, &c., and in further consideration that L. F. Siler shall pay Roxana E. Moore and Harriet T. Sloan five hundred dollars each at the demise of J. R. and H. D. Siler, the said J. R. and H. D. Siler have this day signed, sealed and delivered to L. F. Siler a deed in fee simple to two hundred and sixty-eight acres of land, known as J. R. Siler's home place, and bounded, &c.; Now if the said L. F. Siler shall well and faithfully comply with the terms of this agreement, then this contract shall be construed to be complied with

otherwise the said L. F. Siler shall forfeit and pay to the said party of the first part or his heirs the sum of five thousand dollars. In testimony of which we bind our heirs and legal representatives, hereunto setting our hands and seals, &c." (Signed and sealed by J. R. Siler and L. F. Siler.)

Immediately upon the execution of the deed and said agreement, L. F. Siler went into the joint occupancy of the land with J. R. Siler, and resided thereon with his own family and that of J. R. Siler, until his death in 1870, during which period he took charge of the farm; and after his death his widow and children remained upon the premises with J. R. Siler and his wife, and so continued to do until his death in March, 1876, and her death in the year following.

The plaintiff is the administrator of J. R. Siler, and the defendant, the administrator of L. F. Siler. .

In his complaint the plaintiff alleges a breach of said agreement, in that, neither the legal representatives of the said L. F. Siler, or his heirs, or any person for him have undertaken or offered, since his death, to comply with the terms thereof, by either supporting the said J. R. Siler and his wife, or by paying to the said Roxana E. Moore and Harriet T. Sloan the sums agreed to be paid them, and he prays for judgment against the estate of the defendant's intestate for the sum of five thousand dollars.

In his answer the defendant alleges that his intestate fully complied with all the stipulations contained in said agreement, up to the time of his death, and that a farther performance on his part was thus rendered impossible by the act of God.

At the trial the plaintiff offered the above agreement in evidence, and insisted that the measure of damages was the sum of five thousand dollars—the sum mentioned in the instrument, but His Honor ruled that the sum mentioned

was a penalty and not liquidated damages, to which the plaintiff excepted.

The plaintiff then offered evidence tending to show that after the death of the defendant's intestate, the plaintiff's intestate, supported himself and wife, during the remainder of his life, and that he was compelled to employ others to superintend his business; and other evidence to show the damages he sustained by reason of the failure on the part of the defendant's intestate, or his representatives, to perform the stipulations contained in said agreement, but His Honor, holding that the plaintiff could not recover of the defendant except for a breach of the contract committed in the life time of his intestate, excluded the evidence, and thereupon the plaintiff excepted, submitted to a non-suit, and appealed.

*Mr. J. H. Merrimon*, for plaintiff.
*Mr. Armistead Jones*, for defendant.

RUFFIN, J.   There being no evidence offered in support of the breach, alleged to consist, in the non-payment of the sums stipulated to Roxana E. Moore and Harriet T. Sloan, that part of the case is excluded from our consideration, and the plaintiff's right to recover left to depend upon, as the only other matter complained of, the failure of the personal representatives, or heirs at law, of the intestate L. F. Siler, after his death, to contribute to the support of J. R. Siler and his wife—as to which this court fully concurs in the ruling of His Honor in the court below.   The general rule unquestionably is, that the personal representatives of a party are bound to perform all his contracts, whether specially named in them or not, or else make compensation for their non-performance out of his estate.   But to this there is the exception, as well established as the rule itself, of all

such contracts as require something to be done by the party himself *in person.*

In 1 Chitty's Pleading, 19, it is said that no action lies against the executor upon a covenant to be performed by the testator in person, and which consequently the executor cannot perform ; and again, in Chitty on Contracts, 138, that death, though not in general a revocation of an agreement, may be such when the engagement is a personal one, to be performed by the deceased himself, and requiring personal skill or taste.

In Pollock on Contracts, 367, the principle is thus stated : " All contracts for personal service, which can be performed only during the life of the contracting party, are subject to the implied condition that he shall live to perform them, and should he die, his executor is not liable to an action for the breach of contract occasioned by his death."

In such cases, it is held that the act of God furnishes an excuse sufficient.   Accordingly in *Bourt* v. *Firth,* 4 Court of C. P., 1, a plea to an action on an apprentice-bond that the apprentice was prevented by sickness from performing the contract, was ruled to be a valid plea and the defence a good one, the court saying that incapacity, by reason of the intervention of an act of God, to perform personal service, is an excuse for its non-performance, notwithstanding an absolute and unconditional covenant to render the same ; and again in *Farrow* v. *Wilson,* reported in the same volume at page 744, it was held that where one party covenanted to serve another as *farm-bailiff,* the death of either party dissolved the contract—such being an implied condition, it was said,.in every contract for personal services— and the same doctrine has been recognized in *Robinson* v. *Davidson,* 6 Court of Exchequer, 268 ; *Taylor* v. *Caldwell,* 113 E. C. L. Rep., 826 ; *Dickey* v. *Linscott,* 20 Me., 453.

Assuming such to be the law, under which does the case at bar fall ? the general rule, or the exception as stated ?

This must depend upon the intention of the parties, for at last, it is in every case purely a question as to their intention.

It is true that the cases put down in the books, like those cited by us, are generally those in which the contracts sued on have been to marry—to teach an apprentice—to render services as an author, or as a doctor or a lawyer—such as will be determined by the very nature of the services to be rendered or the skill requisite to perform them, to the exclusion of all thought of performance by any other person than the contracting party.

But still this is so, even in contracts of that nature, because the law *implies* such to have been the intention of the parties, and for that reason, and that alone, construes them to be *personal* contracts, and takes them out of the general rule.

Now if such be the consequence of an implied intention of the parties, how much more should it follow in the case of a contract, in which they have clearly manifested a purpose to treat their contract as personal, and the very circumstances surrounding them forbid that any other construction should be put upon it?

Here, the contract on the part of the defendant's intestate was that *he* would administer to the comfort of his father and mother during their lives, and would *see* that they were provided for; and further, that he would jointly occupy with them their home, and he and his family become members of their family; thus, every feature of it depending upon the relation which he, as a near kinsman, bore to them, and upon the confidence which they reposed in him personally.

It is to be observed, moreover, that the contract was an entire one, to be performed by the administrator in whole or not at all. If bound to maintain them, and *see* to their comfort, he must needs have had the correlative right to

demand admittance, stranger though he might have been, into their home, that he might become an inmate thereof.

If in the life-time of all the parties, the defendant's intestate had sought to introduce a stranger into the family, and through his agency to have performed the services stipulated to be rendered by himself, can it be supposed that the law would, for one moment, have tolerated such a course? and if not, then should the law, after his death, furnish a substitute for him, in his administrator, when he, himself, could not appoint one? We think not; and for the reason that the parties to the contract, manifestly, never contemplated or intended that there should be one.

Our conclusion therefore is that so much of said agreement as imposed upon the defendant's intestate the duty of providing for the plaintiff's intestate and his wife, and of looking after their comfort, was purely personal in its nature, and inasmuch as the defendant could not have enforced his right to perform it, so neither is he liable to an action for not having done so.

There is no error, and the judgment of the court below is affirmed.

No error.                                   Affirmed.