J. H. CARSON AND WIFE, CHARLOTTE M. CARSON, v. IMPERIAL '400'
NATIONAL, INC., ANDREW COLLINS, LILLIAN COLLINS AND MOTOR
HOTEL PROPERTIES, INC. T/A CHARLOTTE IMPERIAL '400' MOTEL,
A LIMITED PARTNERSHIP.

(Filed 4 May, 1966.)

**1. Landlord and Tenant § 10—**

Provisions in a lease authorizing lessor to terminate the lease and re-
possess the property upon the appointment of a receiver for lessee or an
adjudication that lessee is a bankrupt are not contrary to public policy
and are valid, and the right of lessor to repossess the property may not
be defeated by the fact that lessee sublets the property to a solvent sub-
lessee.

**2. Contracts § 12—**

The courts may not under the guise of construction rewrite contracts
executed by litigants.

**3. Landlord and Tenant § 8—**

Where the lessee "assigns" the lease for only a part of the unexpired
term, the transaction is not an assignment of the lease but a subletting,
and the relationship of landlord and tenant continues to exist between the
lessor and lessee.

MOORE, J., not sitting.

PLESS, J., took no part in the consideration or decision of this case.

APPEAL by Imperial '400' National, Inc. (hereinafter Imperial)
and Edward F. Walsh, Receiver for Imperial (hereinafter Receiver),
from *Pless, J.,* September 6, 1965, Schedule A Session of MECKLEN-
BURG.

This action was, as authorized by G.S. 42-26, begun before a
justice of the peace to have defendants removed from Lot 1025 on
South Tryon Street in Charlotte, leased by plaintiffs to Imperial on
June 1, 1962, for a term of 54 years beginning September 1, 1962.

Process was served on Andrew Collins, a general partner in the
limited partnership of Charlotte-Imperial '400' Motel. The magis-
trate rendered judgment for plaintiffs. The partnership appealed.

On August 25, 1965, an order was entered with the consent of
plaintiffs and defendant partnership waiving trial by jury and set-
ting the cause for trial during the week beginning September 12,
1965. On September 10, 1965, a stipulation signed by counsel for
plaintiffs, by counsel for the partnership and defendants Collins and
by counsel for receiver for Imperial was filed and made a part of the
record. The stipulation recited "All defendants are properly before
the Superior Court on appeal from judgment of summary ejectment

in this action on August 6, 1965, by His Hon. T. J. Fletcher, Justice of the Peace * * *."

The court, as authorized by the waiver of jury trial, made extensive findings of fact.

*Cansler & Lockhart for plaintiff appellees.*
*Lane and Helms for Imperial '400' National, Inc., appellant.*

PER CURIAM. The findings necessary for a decision are:

On June 1, 1962, plaintiffs and Imperial, after extensive negotiations, executed a written lease demising to Imperial for a term of 54 years beginning September 1, 1962, Lot No. 1025 on South Tryon Street in Charlotte. In drafting the lease, Imperial's standard form was used. Pertinent interlineations were made so as to modify the printed form to conform to the terms agreed upon by the parties. Imperial agreed that it would erect a two-story building on the lot to be used as a motel. Pertinent to a decision in this case are the provisions of Sections 7 and 12. They are as follows:

"7. Lessor acknowledges that Imperial will require financing applicable to the construction and equipping of the above mentioned motel and by reason thereof, Lessor agrees that Imperial shall have the right during the term of this lease to place real estate mortgages on all or any portion of the property as security for the loans or extensions of credit not to exceed in the aggregate (exclusive of interest and/or finance charges) a sum equal to forty-five hundred dollars ($4,500) per motel unit to be constructed * * *. Such mortgages shall provide for repayment within sixteen (16) years from March 1, 1963 * * *."

"12. Lessor reserves the right to terminate this Lease, and to re-enter and repossess the whole of the property without further notice or demand:

(1) Upon any general assignment for the benefit of the creditors of Imperial; *or if a receiver shall be appointed for Imperial;*

(2) Or upon the adjudication that Imperial is bankrupt; * * *." (The italicized portion of Section 12 was an amendment to the standard form.)

Imperial was given the right to assign its interest in the lease subject to the express limitation that Imperial should not "be relieved of its obligations hereunder except with the express written consent of Lessor" and with the further provision that the assignment could only be made "to a co-venture or co-partnership engaged in a business similar to Imperial."

On March 18, 1963, Imperial borrowed $184,500 and pursuant

to the provisions of Section 7 of the lease, plaintiffs secured the sums so borrowed by their mortgage on the demised property.

On November 21, 1963, Imperial, defendants Collins and Motor Hotel Properties, Inc. (hereinafter Properties) executed a limited partnership agreement. Imperial and defendants Collins were general partners. Properties was a limited partner. Imperial owned 50% of the partnership, defendants Collins 30%, and Properties 20%. The name given the partnership was Charlotte Imperial '400' Motel (hereinafter Motel).

By an undated "Assignment of Motel" acknowledged by Imperial and Properties on July 20, 1964, and by defendants Collins on July 24, 1964, Imperial assigned, transferred and set over unto Motel all of Imperial's "right, title and interest in and to the Motel located at premises 1025 South Tryon Street, Charlotte, North Carolina, including the Motel building, appurtenances thereto and furniture, fixtures and equipment located in, on or about said premises and assignor's right, title and interest for a period of 35 years commencing on the date hereof." Plaintiffs were not informed of the execution of the "Assignment of Motel." They learned of the transfer on or about June 14, 1965.

On June 3, 1965, Imperial and Properties filed a petition under Chapter XI of the Federal Bankruptcy Act in the United States District Court of New Jersey. Petitioners there alleged they could not pay their debts as they matured. They asked for the appointment of a receiver for their properties. On June 4, 1965, an order was entered in the District Court "Appointing Edward F. Walsh, Receiver for Imperial and vesting him with full power of administration as contemplated by Section 48-A2 of the Bankruptcy Act, rather than as a mere custodian."

Plaintiffs learned of the appointment of a receiver for Imperial on June 9, 1965. They promptly gave notice of the termination of the lease because of the breach of the provisions of Section 12.

While the record on appeal stated that Imperial and the receiver were regularly before the court and appealed from the judgment rendered by the Superior Court, there is nothing in the record other than the stipulation to establish that fact, and there is nothing in the record to show that the bankruptcy court had authorized the receiver to enter an appearance in this action. This fact was called to the attention of counsel for appellants on oral argument.

Subsequent to the oral argument counsel for Receiver filed a motion in this Court asking that Walsh as Receiver be made a party and that he be allowed to ratify and approve the notice of appeal given by his counsel.

Subsequently an amended motion was filed by Thomas J. O'Neill, Trustee of the Estate of Imperial '400' National, Inc., alleging that he is a necessary party to the action and as such desires to be made a party and to ratify the action of counsel purporting to represent Walsh as Receiver.

His petition is supported by: (1) An order of the United States District Court of New Jersey dated February 21, 1966, appointing Mr. O'Neill as Trustee of the properties of Imperial as provided by Chapter 10 of the Bankruptcy Act. The order of the District Court directed Walsh as Receiver to transfer and convey the properties of Imperial to O'Neill, as Trustee. (2) The order of the United States District Court of New Jersey specifically authorized O'Neill as Trustee to continue the employment of counsel to represent the interest of Imperial in this litigation. (3) A letter from O'Neill, as Trustee, to Lane & Helms expressing approval of the work theretofore done by them and authorizing them to continue to represent Imperial and its interest in this litigation.

The motion of O'Neill, Trustee, is allowed. The Clerk of this Court is directed to cause the motion and supporting documents to be mimeographed and made a part of the record in this cause.

Appellants have not excepted to any of the findings of fact made by the court. The only question for decision is: Do the findings support the judgment awarding possession of the demised premises to plaintiffs?

The provisions of Section 12 authorizing plaintiffs-lessors to terminate the lease and repossess the property upon the appointment of a receiver for Imperial or adjudication that it was a bankrupt are not void. They are not contrary to public policy nor prohibited by statute. To the contrary, similar provisions are frequently inserted in leases, particularly when of long duration. *Finn v. Meighan,* 325 U.S. 300, 89 L. Ed. 1624, 65 S. Ct. 1147; *415 Fifth Avenue Co., Inc. v. Finn,* 146 F. 2d 592; *In Re Clerc Chemical Corporation,* 142 F. 2d 672; *Floro Realty & Investment Co. v. Stemm Electric Corp.,* 128 F. 2d 338; *Urban Properties Corporation v. Benson, Inc.,* 116 F. 2d 321; *In Re Walker, et al,* 93 F. 2d 281; 51 C.J.S. 632; 32 Am. Jur., 735.

Appellants do not challenge the validity of the provision of Section 12 of the lease. Their position is that the parties to the lease intended that the provision should apply to Imperial only if it had the immediate right of possession when a receiver was appointed for it or it was adjudged a bankrupt. They say provisions for forfeiture are to be strictly construed, and a provision authorizing a lessor to cancel upon the appointment of a receiver for lessee should be con-

strued to mean cancellation only if a receiver is appointed for the person or entity presently rightfully in possession. *Flagg v. Andrew Williams Stores*, 273 P. 2d 294, typifies the line of cases on which appellants rely.

The answer to appellants' position is: There is no ambiguity in the language the parties used to express their agreement. By express language the right is given to terminate if *Imperial* should be adjudged a bankrupt. If the parties had intended to limit the right to terminate to the bankruptcy of the entity having the right to possession, it would have been easy to have used words limiting lessor's right. The provisions with respect to cancellation names Imperial. The court found that prior to the execution of the lease plaintiffs had made an extensive investigation as to the financial responsibility of Imperial and, based on its investigation, believed Imperial "was a financially sound and substantial enterprise." This finding is supported by the fact that lessors mortgaged their properties to permit Imperial to borrow nearly $200,000. Lessors permitted Imperial to assign the lease to a limited class of assignees, *viz*, co-ventures or a co-partnership engaged in a business similar to that of Imperial. Here the court found that the partnership was an alter ego of Imperial. This finding is not challenged by an exception. Courts cannot under the guise of construction rewrite contracts executed by the litigants. *Parks v. Oil Company*, 255 N.C. 498, 121 S.E. 2d 850; *Casualty Co. v. Teer*, 250 N.C. 547, 109 S.E. 2d 171.

The provisions of Section 13 relating to assignments do not include sublettings. There is nothing in the lease directed to sublettings. Imperial had the right to sublet. *Hargrave v. King*, 40 N.C. 430.

Here the partnership acquired the right to occupy the premises for only a portion of Imperial's term. It was a sub-tenant, not an assignee. The relationship of landlord and tenant between plaintiffs and Imperial continued to exist notwithstanding the transfer made by Imperial in July 1964. *Millinery Co. v. Little-Long Co.*, 197 N.C. 168, 148 S.E. 26. If the appellants' position is sound, we would have the strange situation of the leasehold estate being valid for the next 34 years, invalid for the remaining 17 years of the term because of a present violation of the lessor's right to terminate the lease. Certainly the parties never contemplated such a strange situation when they executed the lease. The facts found support the court's conclusion that Imperial's bankruptcy and the appointment of a receiver for its properties authorized lessor's act in declaring the lease terminated.

The judgment of the Superior Court is
Affirmed.

PLESS, J., took no part in the consideration or decision of this
case.

MOORE, J., not sitting.