MRS. ROBERT H. PEASELEY, EXECUTRIX OF THE WILL OF ROBERT H. PEASELEY, DECEASED v. VIRGINIA IRON, COAL AND COKE COMPANY, A CORPORATION

No. 7126SC481

(Filed 18 August 1971)

1. Brokers and Factors § 6; Principal and Agent § 10— sales commission — death of sales agent — estate's right to commissions

The estate of a sales agent who had negotiated a coal sales contract between the defendant seller of coal and a power company is entitled to the sales commissions on the coal which the seller has delivered to the power company since the agent's death, where the agent's commission contract did not contemplate that the agent was to perform personal services under the sales contract after the sales contract had been executed.

2. Rules of Civil Procedure § 56— summary judgment

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. G.S. 1A-1, Rule 56.

**3. Contracts § 12— construction of contract**

Where a contract is plain and unambiguous, the construction of the agreement is a matter of law for the court.

**4. Contracts § 18— modification of contract — requisites of new agreement**

To be effective as a modification, a new agreement, whatever its form and however evidenced, must possess all elements necessary to form a contract.

APPEAL by defendant from *Snepp, Judge,* 4 January 1971 Schedule "D" Civil Session of Superior Court held in MECKLEN-BURG County.

Defendant appeals from summary judgment entered for plaintiff on the question of defendant's liability for sales commissions on coal sold under a contract negotiated by defendant's sales agent, Robert H. Peaseley (Peaseley) before his death, but delivered after his death. The issue of damages was retained for jury determination.

This case was originally before this Court upon appeal by plaintiff from judgment of nonsuit entered at the close of her evidence. This Court reversed. *Peaseley v. Coke Co.,* 5 N.C. App. 713, 169 S.E. 2d 243, *cert. denied,* 275 N.C. 596. Reference is made to that opinion for a more detailed statement of facts.

*Blakeney, Alexander & Machen by Whiteford S. Blakeney for plaintiff appellee.*

*Helms, Mulliss & Johnston by Fred B. Helms and E. Osborne Ayscue, Jr., for defendant appellant.*

MALLARD, Chief Judge.

[1] In support of her motion for summary judgment, plaintiff offered in evidence, among other things, two contracts which defendant admitted having executed. The first contract (commission contract) was in the form of a letter written on behalf of defendant to Peaseley on 30 August 1960, and accepted by Peaseley on 6 September 1960. The letter provides in pertinent part:

"Beginning September 1, 1960, the Virginia Iron, Coal and Coke Company gives to you or your associates the exclusive right to offer and sell all coal produced and/or sold by Virginia Iron, Coal and Coke Company to Mill Power Supply Company for use by Duke Power Company.

"In consideration for the exclusive right to sell this account, you agree to limit your commission to (10¢) ten cents per net ton. This commission will be paid directly to you by separate remittance on tons actually shipped, determined by railroad weights.

"This agreement is to remain in effect as long as you are able to place for use by the Duke Power Company comparable Virginia Iron, Coal and Coke Company tonnage as shipped in 1959, or approximately 420,000 tons per year."

The second contract (sales contract) was between defendant, seller, and Mill Power Supply Company (Mill Power), buyer for its principal, Duke Power Company. Under this contract defendant agreed to sell and deliver and Mill Power agreed to buy and accept coal of a specified type and quality. 960,000 tons of coal were to be delivered under the contract during the first year, subject to the buyer's option to increase or decrease this amount by 10%. Quantity in subsequent years could, at buyer's option, be increased 10% over the preceding year by giving seller six months written notice, prior to the beginning of each new year under the contract. The new quantity was also subject to an increase or decrease of 10% at buyer's option.

The sales contract, which was for an initial period of three years, became effective 1 July 1963. It was to continue after the expiration of the three-year period unless terminated by either party giving 24 months written notice at any time after the completion of the first year of the contract.

It was admitted that the sales contract was brought about through Peaseley's efforts.

Peaseley died 11 May 1965. The contract continued in force and since Peaseley's death defendant has delivered coal in accordance with its terms. Commissions have been paid on the coal delivered before Peaseley's death, and the sole matter in dispute here is whether Peaseley's estate is entitled to commis-

sions on coal which has been delivered pursuant to the sales contract since Peaseley's death.

Defendant contends the case should be resolved, as a matter of law, in its favor, arguing that the commission contract was a contract for personal services which terminated upon Peaseley's death. A contract for personal services is terminated by the death of the person who was to perform, since his death makes further performance impossible. *Stagg v. Land Co.,* 171 N.C. 583, 89 S.E. 47; *Siler v. Gray,* 86 N.C. 566. A contract to sell a product is ordinarily one calling for personal services. See: *Home Sewing-Machine Co. v. Rosensteel,* 24 Fed. 583 (W.D. Pa. 1885); *Smith v. Preston,* 170 Ill. 179, 48 N.E. 688 (1897); *Smith v. Zuckman,* 203 Minn. 535, 282 N.W. 269 (1938).

However, as pointed out by Judge Parker in the opinion filed in the former appeal, plaintiff is not seeking to continue in effect the personal services aspect of the commission contract, but is seeking payment for personal services performed under the contract by Peaseley before his death; that is, commissions on coal sold pursuant to the sales contract negotiated by Peaseley between defendant and Mill Power.

"A sales agent whose efforts are the procuring cause of a sale made during the period the agency relationship existed is entitled to commissions thereon even though actual delivery of the article sold be made after termination of the agency, at least absent a clear understanding to the contrary. . . . " *Peaseley v. Coke Co., supra,* and cases there cited. Certainly no understanding can be inferred from the commission contract that defendant would be liable for commissions on sales of coal procured through Peaseley's efforts, only if Peaseley lived until the coal sold was actually delivered.

Defendant further contends that if the case cannot be decided in its favor, as a matter of law, summary judgment was nevertheless improper.

[2] Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. G.S. 1A-1, Rule 56. Defendant insists that a factual question arises as to whether the commission contract required Peaseley to continue to perform personal

services, even after the sales contract was executed. In support of this position, defendant points to evidence which tended to show that after the sales contract was entered Peaseley continued to work to increase the volume of coal Mill Power purchased, negotiated settlements when disagreements arose about the quality of coal delivered and otherwise "serviced the account."

It was only natural for Peaseley to work to increase the volume of coal Mill Power purchased, because an increase in volume would mean an increase in commissions. It was also natural for him to perform services which would tend to insure an amicable relationship between the parties to the sales contract. After all, either party had the right to terminate the contract upon 24 months notice, and thus terminate Peaseley's future commissions. The question, however, is not what Peaseley voluntarily undertook to do, but what the contract required him to do in order to receive commissions.

All Peaseley was required to do under his commission contract in order to be entitled to commissions was to sell and place for use by Duke Power approximately 420,000 tons of coal a year. Under the sales contract which Peaseley negotiated, Mill Power became legally bound to accept and pay for 960,000 tons of coal a year (subject only to minor deviations in quantity as provided in the contract). Defendant became legally bound to furnish this coal. These obligations continued so long as the contract continued. As stated by Judge Parker in the former opinion in this case:

> "Certainly this coal was sold in the sense that the sales contract under which it moved was fully negotiated, reduced in detail to writing, and was signed by the contracting parties prior to Peaseley's death. . . . It may be assumed that both the buyer and seller contemplated that much of the coal sold under the contract was to be mined, processed, and shipped by the defendant subsequent to the date the contract was executed. That the coal covered by the contract may have been mined, processed and shipped before or after the date the contract was executed, or before or after the date of Peaseley's death, does not, in our view, relieve defendant of the obligation to pay commissions on the coal so sold and shipped." 5 N.C. App. at 721, 722, 169 S.E. 2d at 248.

[3]  It is elementary that where a contract is plain and un-ambiguous the construction of the agreement is a matter of law for the court. 2 Strong, N. C. Index 2d, Contracts, § 12, p. 311. In the case of *Weyerhaeuser Co. v. Light Co.*, 257 N.C. 717, 127 S.E. 2d 539, it is stated: "When the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of constructions, cannot reject what the parties inserted or insert what the parties elected to omit. *Indemnity Co. v. Hood,* 226 N.C. 706, 710, 40 S.E. 2d 198. It is the province of the courts to construe and not to make contracts for the parties. *Williamson v. Miller,* 231 N.C. 722, 727, 58 S.E. 2d 743; *Green v. Insurance Co.,* 233 N.C. 321, 327, 64 S.E. 2d 162. The terms of an unambiguous contract are to be taken and understood in their plain, ordinary and popular sense. *Bailey v. Insurance Co.,* 222 N.C. 716, 722, 24 S.E. 2d 614."

The language of the commission contract and the sales contract is clear and unambiguous. We may not, under the guise of construction, place on defendant's agent Peaseley, duties which the contracts obviously did not contemplate. *Taylor v. Gibbs,* 268 N.C. 363, 150 S.E. 2d 506; *Indemnity Co. v. Hood, supra.* If the parties had intended that Peaseley be required to "continue to service" sales made under the sales contract be-tween plaintiff and Mill Power, it would have been a simple matter for them to have so provided. See *Carson v. National Co.,* 267 N.C. 229, 147 S.E. 2d 898.

[4]  Defendant offered an affidavit of its President F. X. Car-roll in which Carroll stated that he had discussed with Peaseley, on several occasions before Peaseley's death, the fact that com-missions on coal sold to Mill Power under the 1963 contract would cease at Peaseley's death, and that Peaseley understood this. The parties present vigorous arguments as to whether this evidence is precluded by the dead man's statute. G.S. 8-51. In our opinion this question is immaterial, for the evidence offered was insufficient to establish a modification of the commission contract which defendant has agreed it executed. To be effective as a modification, a new agreement, whatever its form and however evidenced, must possess all elements necessary to form a contract. *Electro Lift v. Equipment Co.,* 4 N.C. App. 203, 166 S.E. 2d 454, *cert. denied,* 275 N.C. 340.

It is not contended that Peaseley ever agreed, for a val-uable consideration, to surrender any of the benefits he was

entitled to under his commission contract. His acquiescence in an understanding expressed by defendant's president as to what he thought certain legal effects of the contract to be did not alter the contract's actual legal effect.

The terms of the contracts involved having been admitted by defendant, the burden was on the defendant to show any modification which it contended had been made. *Russell v. Hardwood Co.*, 200 N.C. 210, 156 S.E. 492. The evidence presented by defendant, even when viewed in the light most favorable to defendant, was in our opinion insufficient to permit submission to the jury of any issue. We therefore hold that no triable issue of fact was presented and summary judgment was properly entered for plaintiff.

Affirmed.

Judges BROCK and VAUGHN concur.