[Cite as *B & G Properties Ltd. Partnership v. Office Max, Inc.*, 2013-Ohio-5255.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99741**

# B & G PROPERTIES LIMITED PARTNERSHIP

PLAINTIFF-APPELLEE

vs.

# OFFICEMAX, INC.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-754680

**BEFORE:** Celebrezze, J., Stewart, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 27, 2013

**ATTORNEYS FOR APPELLANT**

Michael J. Zbiegien, Jr.
Patrick J. Krebs
Taft Stettinius & Hollister, L.L.P.
200 Public Square
Suite 3500
Cleveland, Ohio   44114

Michael M. Dingel, pro hac vice
Officemax, Inc.
1111 West Jefferson Street
Suite 510
Boise, Idaho   83702


**ATTORNEYS FOR APPELLEE**

Michael N. Ungar
Marvin L. Karp
Lawrence D. Pollack
Matthew T. Wholey
Ulmer & Berne, L.L.P.
Skylight Office Tower
1660 West 2nd Street
Suite 1100
Cleveland, Ohio   44113

FRANK D. CELEBREZZE, JR., J.:

**{¶1}** Appellant, OfficeMax, Inc. ("OfficeMax"), appeals from the grant of summary judgment and certain damages in favor of appellee, B & G Properties Limited Partnership ("B&G"), in B&G's action for breach of a commercial lease agreement between it and OfficeMax. OfficeMax claims the trial court erred in finding the lease was not terminated when an assignee of the lease filed for bankruptcy and that B&G was not required to mitigate its damages under the lease. OfficeMax also argues the trial court erred in finding that a 5 percent late payment provision was an enforceable damages clause rather than an unenforceable penalty. After a thorough review of the record and law, we affirm.

## I. Factual and Procedural History

**{¶2}** In 1994, the parties negotiated a 20-year lease of commercial property located in North Olmsted, Ohio, that commenced in 1995. OfficeMax never occupied the premises, instead assigning its rights in the lease to Planet Music, Inc. ("Planet Music") in 1996. Planet Music assigned its interest in the lease to Borders, Inc. ("Borders") in 2005. In February 2011, Borders filed for Chapter 11 bankruptcy protection. Borders ultimately went from plans for reorganization to liquidation. The bankruptcy trustee eventually rejected the lease and sent notice to B&G. In turn, B&G sought rents from OfficeMax. OfficeMax argued that Section 7.2 of the lease agreement terminated the lease when Borders filed for bankruptcy and rejected the lease. B&G disagreed, took possession of the premises, and sued OfficeMax on May 6, 2011, for breach of contract in

the Cuyahoga County Common Pleas Court. The case was transferred to the specialized commercial docket. Both parties filed motions for summary judgment. On April 19, 2012, the trial court granted B&G's motion and found that OfficeMax breached the lease agreement.

{¶3} The court then set about determining damages. B&G filed a motion seeking to limit the scope of the hearing asserting that the lease agreement included a provision waiving its common law duty to mitigate its damages. OfficeMax disagreed with that interpretation. On October 3, 2012, the trial court ruled that the lease agreement did waive B&G's obligation to mitigate its damages and found OfficeMax would be liable for the entire amount of outstanding rent. OfficeMax attempted to appeal this order, but this court found that it was not final and appealable at that time. The parties, for the most part, then stipulated to damages, except for a 5 percent late payment provision. OfficeMax argued this provision was an unenforceable penalty. On March 11, 2013, the trial court found the provision enforceable and awarded B&G $1,212,821.84 in past due rent, penalties, interest, and attorney fees. OfficeMax then filed the instant appeal assigning four errors for review:

> I. The trial court erred in failing to enforce the clear and unambiguous terms of the commercial lease agreement at issue which included a provision, Section 7.2(a) thereof, that called for the cancellation of the Lease if Borders, the "Tenant" of the Lease, rejected the Lease in bankruptcy which rejection in fact occurred March 16, 2011.
>
> II. The trial court erred in ruling that Section 7.1 of the Lease waived B&G's common law duty to mitigate damages.

III. The trial court erred in denying OfficeMax's motion to amend the October 3, 2012 journal entry.

IV. The trial court erred in ruling that the 5% late charge provided for in Section 2.1(d) of the Lease is an enforceable late fee and not an unenforceable penalty.

## II. Law and Analysis

### A. Summary Judgment

### 1. Standard of review

**{¶4}** This court reviews a lower court's summary judgment decisions de novo.

*Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

> "Summary judgment is appropriate if (1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9.

*DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15.

**{¶5}** A decision regarding contract interpretation is a matter of law, reviewed de novo as well. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452. "Ohio courts 'presume that the intent of the parties to a contract is within the language used in the written instrument. If [courts] are able to determine the intent of the parties from the plain language of the agreement, then there is no need to interpret the contract.'" *Telecom Acquisition Corp. I v. Lucic Ents.*, 8th Dist. Cuyahoga No. 95951, 2012-Ohio-472, ¶ 11, quoting *Saunders* at ¶ 9.

### 2. Lease Cancellation

**{¶6}** OfficeMax argues that is it not liable under the lease because it was canceled pursuant to Section 7.2(a) of the agreement.   This provision states,

> If a petition is filed by or against Tenant[1] under Chapter 7 of the Bankruptcy Code and the Trustee elects to assume this Lease for the purposes of assigning it or otherwise, the assumption or assignment, or both, may be made only if all of the terms and conditions set forth under Section 7.2(b) below are satisfied.   If the Trustee fails to assume this Lease within sixty (60) days after his appointment, or within such additional time period as the Bankruptcy Court may allow, this Lease shall be deemed to have been rejected. * * * In the event this Lease is rejected, Landlord shall then immediately be entitled to possession of the Premises without further obligation to Tenant or the Trustee and this Lease shall be canceled. Landlord's right to be compensated for damages in the bankruptcy proceedings, however, shall survive.[2]

**{¶7}** B&G argues that the defined term "Tenant" in the lease refers to OfficeMax, and interpreting the word "Tenant" in the bankruptcy termination provision to mean Borders is contrary to the contract and rules of contract interpretation.   However, after an assignment, the assignee steps into the shoes of the assignor and assumes the rights and responsibilities under the lease. Certain provisions clearly must refer to the assignee. The assignee has the ability to execute an option to extend the lease,[3] something it can

---

[1] "Tenant" is a defined term under the lease agreement to mean "OFFICEMAX, INC., an Ohio corporation."

[2] Borders filed for bankruptcy reorganization under Chapter 11, which is addressed by Section 7.2(b) of the agreement, and has similar wording about rejection of the lease, except that it does not contain the cancellation language and does not state how the lease is to be treated after a rejection in a Chapter 11 proceeding. However, the bankruptcy proceedings turned into a liquidation similar to those under Chapter 7 following Borders' failed attempt to reorganize.   Therefore, the language of Section 7.2(a) should be read to apply because the bankruptcy proceedings ended in liquidation rather than a reorganization.

[3] *See Telecom Acquisition Corp. I*, 8th Dist. Cuyahoga No. 95951, 2012-Ohio-472.

only do if the word "Tenant" in the option provision is read to refer to an assignee. There are other provisions that clearly always refer to the original tenant, like a clause holding the original tenant liable for any breach by an assignee. Therefore, this court must determine whether the bankruptcy termination provision is one that should be interpreted to refer to the tenant in possession or the original tenant.

{¶8} To understand the intention of the parties, it is necessary to understand the nature of the clause at issue. This bankruptcy termination clause is common in commercial leases. These provisions arose to permit a landlord to terminate the lease if the tenant filed for bankruptcy. These clauses came to be known as "ipso facto" clauses. Rubin, *Not Every Ipso Facto Clause Is Unenforceable in Bankruptcy*, 32-7 ABIJ 12 (2013). Their genesis was the result of various bankruptcy code provisions that allowed the bankruptcy estate to avoid certain lease provisions, including allowing assignment without landlord consent. These provisions were widely enforceable. Wadyka, *Executory Contracts and Unexpired Leases: Section 365,* 3 Bank.Dev.J. 217, 245 (1986). However,

> [t]hese clauses came to be seen by Congress as hampering a debtor's rehabilitation efforts, and in 1978, to further the goal of preserving a debtor's assets and providing the debtor an opportunity to formulate a plan of reorganization, Congress enacted various provisions under the Bankruptcy Reform Act [of 1978] that invalidated contractual ipso facto clauses against debtors in bankruptcy.

Lynn, Brown, and Mayesh, *Enforcing Bankruptcy Termination Lease Clauses Against Assignees*, New York Law Journal (Oct. 9, 2007).

{¶9} The clause at issue in the present case is triggered on the rejection of the lease in bankruptcy. Its purpose is to return possession of the premises to the lessor as soon as possible with minimal disturbance to the bankruptcy proceedings. The bankruptcy estate seeking to reorganize and emerge as a going business can be devastated by the loss of its lease and its business premises. However, a lease rejected by the bankruptcy trustee no longer benefits the estate, and possession can be returned to the lessor. This bankruptcy termination provision therefore benefits the lessor when a tenant in possession rejects the lease.

{¶10} OfficeMax asserts that the complete assignment of all its interests in the lease to Planet Records and then to Borders relieved it of any liability under the lease when the lease was cancelled as a result of the assignee "tenant" under the lease, Borders, filing for bankruptcy and rejecting the lease.

> When a lease is assigned, the assignee takes over all obligations contained in the initial contract between the landlord and the lessee. The "lessee is not discharged from his obligations under such lease, [but] the assignee assumes the position of principal obligor for the performance of the covenants of the lease, and the lessee becomes his surety for such performance."

*Lucic Ents.*, 8th Dist. Cuyahoga No. 95951, 2012-Ohio-472, ¶ 28 (Stewart, J., dissenting), quoting *Gholson v. Savin*, 137 Ohio St. 551, 31 N.E.2d 858 (1941), paragraph two of the syllabus. *See also Ogle Leasing Co. v. Submarine Galley, Inc.*, 2d Dist. Montgomery No. 11267, 1990 Ohio App. LEXIS 42, *13 (Jan. 11, 1990).

{¶11} This black letter law was codified by the parties in the lease itself. Section 8.2 states, "[a]ny assignment, subletting or other transfer, even with the consent of the

Landlord, shall not relieve Tenant from primary liability for the payment of rent and other charges or from the primary obligation to keep and be bound by the terms, conditions, and covenants of this Lease."

{¶12} The primary disagreement between OfficeMax and B&G is to whom should the bankruptcy termination provision in Section 7.2 apply, OfficeMax or Borders.

{¶13} OfficeMax relies on New York case law to argue that "Tenant" under the bankruptcy termination provision should be construed to mean Borders. *Staples, Inc. v. Moses*, 806 N.Y.S.2d 448, 9 Misc.3d 1102(A) (2005). In that case, Staples assumed a commercial lease through assignment by the original lessee. The lease contained a bankruptcy termination provision similar to the provision in the present case that entitled the landlord to immediate possession if a petition in bankruptcy was filed by the tenant under the lease. The landlord attempted to regain possession of the premises after it discovered that the original lessee filed for bankruptcy several times. The trial court determined that the provision should apply to the tenant in possession at the time of the bankruptcy filing, meaning Staples, not the original lessee. However, the *Moses* court recognized that it is in conflict with another New York case, *Inip Co. v. Bailey, Green & Elger, Inc.*, 356 N.Y.S.2d 436, 78 Misc.2d 235 (1974).

{¶14} In *Inip Co.*, the bankruptcy termination clause was more detailed and gave the landlord the option to terminate the lease upon the tenant filing for bankruptcy. The tenant under the lease assigned its interest to a third party. The original tenant filed for bankruptcy, and the landlord cancelled the lease under this provision even though the

tenant in possession remained solvent and remained current in rental payments. The third-party tenant remained in possession in derogation of the landlord's notice to vacate. The court ruled that the bankruptcy termination provision applied to the original tenant under the lease. It recognized the inequitable results visited on the tenant in possession, but determined that risk was assumed by the assignee tenant when it assumed the lease.

{¶15} There is a dearth of case law on this area, but the majority of cases hold that a bankruptcy termination provision in a commercial lease applies to the tenant in possession after an assignment where the language of the provision does not differentiate between the original tenant and assignees. *Stamm v. Buchanan*, 55 N.M. 127, 128, 227 P.2d 633 (1951); *A.J. Flagg v. Andrew Williams Stores, Inc.,* 127 Cal.App.2d 165, 273 P.2d 294 (1954); *Waukegan Times Theater Corp. v. Conrad*, 324 Ill.App. 622, 59 N.E. 308 (1945).

{¶16} The New Mexico Supreme Court determined that the original lessee's declaration of bankruptcy did not entitle the lessor to retake possession when the assignee tenant in possession had not breached the lease. *Stamm* at 128. That court addressed the question

> whether, after valid assignment of a lease pursuant to lessor's consent contained in the lease, involuntary bankruptcy of original lessee, who as assignor executed the assignment, gave lessor the right to forfeit the lease as against an assignee in possession, performing all the covenants of the lease on lessee's part to be performed, by reason of an option in the lease providing that bankruptcy of the "lessee," voluntary or involuntary, should give lessor the right forthwith to terminate the lease and retake possession of the demised premises.

*Id*. The court reaffirmed that

"[t]o construe the option paragraph so as to permit the termination of the lease upon the bankruptcy of the assignee would result in a forfeiture which clearly would be inequitable in this case, and is to be avoided. The law frowns upon forfeitures. Forfeitures should never be decreed unless the language of the instrument sought to be construed so states in clear, unmistakable terms."

*Id.* at 132, quoting *In re Murray Realty Co.*, 35 F.Supp. 417, 419 (N.D.N.Y.1940). *See also Model Dairy Co. v. Foltis-Fischer, Inc.*, 67 F.2d 704 (2d Cir.1933) (holding a provision terminating the lease on appointment of a receiver for the tenant applied to an assignee in possession); *In re Famous Fain Co.*, 13 F.2d 529 (2d Cir.1926) (holding that the bankruptcy termination provision applied to the assignee in possession because the landlord treated it as the tenant and executed ancillary documents that referred to the assignee in possession as tenant).

{¶17} The majority of these cases are underpinned by the abhorrence in the law for forfeiture of the leasehold estate. *See, e.g., A. J. Flagg* at 176-177. Without abundantly clear language that the termination provision should apply only to the original lessee,[4] this court is loath to effectuate a forfeiture that may be wrought by these common termination provisions. Therefore, we hold that the provision applies to tenants in possession when the parties to a lease do not make it clear to whom it should apply after an assignment. Parties may contract for the provision to apply differently, but "where a provision so full of financial hazard and danger to a tenant in possession under an

---

[4] *See Carson v. Imperial "400" Natl., Inc.*, 267 N.C. 229, 147 S.E.2d 898 (1966) (where the termination provision referenced the original lessee by name rather than generically as tenant, the North Carolina Supreme Court determined the bankruptcy termination provision applied to the original tenant).

assignment is intended, it must rest on language so plain and unmistakable that the courts are left no alternative but to enforce it according to the letter." *Stamm* at 135. This holding comports with the basic purposes of these provisions to return possession of the property to the landlord as quickly as possible when the lease has been rejected in bankruptcy.

{¶18} The fact that the provision applies to Borders and the lease was terminated does not resolve the question of OfficeMax's liability. OfficeMax argues that the cancellation of the lease absolves it of liability for future rents owed for the duration of the lease. However, the termination of the lease as a result of its repudiation by the tenant in possession does not impact the tenant's or the surety's liability for rents. This is because "despite the termination of the lease * * * [l]essees are potentially liable * * * for the rent up to the point of the lessor's finding a new tenant, or the expiration of the lease, whichever is earlier." *Dennis v. Morgan*, 89 Ohio St.3d 417, 419, 2000-Ohio-211, 732 N.E.2d 391. *See also Pinnacle Mgt. v. Bell*, 12th Dist. Butler No. CA2011-08-145, 2012-Ohio-1595, ¶ 8. Further, "an assignee and the original lessee may be held jointly and severally liable where there has been a valid assignment." *Colony by the Mall v. Duckro*, 2d Dist. Montgomery No. CA 6169, 1979 Ohio App. LEXIS 8802, *9 (June 29, 1979).

{¶19} Under Section 7.1(iv), B&G preserves OfficeMax's responsibility for all rents for the entire period of the lease after the lease is terminated. This provision provides, "[i]n case of re-entry, or of the termination of this Lease, whether by summary

proceedings or otherwise, Tenant shall remain liable for the Fixed Rent, Additional Rent and other obligations of Tenant herein provided for the balance of said term, whether Premises be relet or not * * *."   "Cancel" and "terminate" have the same meaning in this case.   *Thomas v. Am. Elec. Power Co.*, 10th Dist. Franklin No. 03AP-1192, 2005-Ohio-1958, ¶ 35, citing *Grant v. Aerodraulics Co.*, 91 Cal.App.2d 68, 73, 204 P.2d 683 (1949) ("[t]he words 'terminate,' 'revoke' and 'cancel,' as used in * * *  the written agreement, all have the same meaning, namely, the abrogation of so much of the contract as might remain executory at the time notice is given").   OfficeMax argues that the cancellation of the lease terminates liability for the executory portion of it. However, Section 7.1(iv) specifically imposes liability on the tenant for the duration of the lease even in the event the lease is terminated, and Section 8.2[5] imposes that liability on OfficeMax.[6]

{¶20} The reservation of rights to rents in Section 7.1 for the duration of the lease harmonizes with the language of the bankruptcy provision, which preserves B&G's claims for rents when it states that its "right to be compensated for damages in the bankruptcy proceedings, however, shall survive."   Section 7.2(a).

---

[5] "Any assignment, subletting or other transfer, even with the consent of the Landlord, shall not relieve Tenant from primary liability for the payment of rent and other charges or from the primary obligation to keep and be bound by the terms, conditions, and covenants of this Lease."

[6] B&G claims its cause of action survives termination of the lease according to R.C. 1310.51. However, this statute, a part of Ohio's codification of the Uniform Commercial Code, does not apply to the lease of real property.   *See* R.C. 1310.01(A)(10) (defining "lease" to mean "a transfer of the right to possession and use of goods").

**{¶21}** B&G argues that the bankruptcy termination provision should apply only to the original lessee, and a holding contrary to its position creates an incentive for lessees looking for a way out of a long-term lease to simply assign the lease to an insolvent entity, which can then file for bankruptcy and terminate the lease. B&G also argues that a contrary ruling would create a disincentive for landlords to allow assignments. However, the holding of this court eliminates these possibilities while at the same time preserving the rights of tenants in possession.

**{¶22}** We therefore hold that the bankruptcy termination provision applies to Borders, the tenant in possession at the time of the bankruptcy, but, based on the language of the contract, OfficeMax, the assignor, remains jointly and severally liable as a surety.

### 3. Duty to Mitigate Damages

**{¶23}** There is inherent in every contract a duty to act in good faith. As a function of this duty, plaintiffs must reasonably act to lessen the financial impact of a breach. This duty to mitigate damages demands that landlords attempt to relet the premises when the tenancy terminates prematurely as a result of the tenant's breach. *Frenchtown Square Partnership v. Lemstone, Inc.*, 99 Ohio St.3d 254, 2003-Ohio-3648, 791 N.E.2d 417, ¶ 21.

> Imposing such a duty assures that an award of damages will put the injured party in as good of a position as if the contract had not been breached while affording the least amount of cost to the defaulting party. *F. Enterprises, Inc, et al. v. Kentucky Fried Chicken Corp.* (1976), 47 Ohio St.2d 154, 160, 351 N.E.2d 121. This is in conformity with the tenants of contract law. *Id.* Requiring a landlord to mitigate damages by attempting to relet the abandoned premises also promotes the most productive use of the land while at the same time, discourages injured parties from suffering

avoidable economic losses. [*White v. Smith*, 8 Ohio App. 368 (7th Dist.1917)].

*New Towne L.P. v. Pier 1 Imports (U.S.)*, 113 Ohio App.3d 104, 108, 680 N.E.2d 644 (6th Dist.1996). However, this common law duty, like many others, may be changed by negotiation between the parties. *Frenchtown Square* at ¶ 20.

{¶24} Here, the parties' agreement includes the following provision in Section 7.1:

> In case of re-entry, or of the termination of this Lease, whether by summary proceedings or otherwise, Tenant shall remain liable for the Fixed Rent, Additional Rent and other obligations of Tenant herein provided for the balance of said term, whether Premises be relet or not, and for expenses to which Landlord may be put in re-entering, including preservation of the Demised Premises, less however, the avails after deducting brokers' commissions, remodeling and redecorating expenses and attorney's fees, if any, in connection with the reletting, upon demand of Landlord. Any such reletting may be for a term exceeding or less than the period of this Lease. Landlord shall not be liable for failure to relet the Premises, and in the event of reletting, for failure to collect the rent under such reletting.

The trial court found this provision obviated B&G's duty to mitigate its damages by attempting to relet the premises.

{¶25} OfficeMax states that the lease language before us is substantially the same as the language employed in the lease that was the focus of *Westfield Franklin Park Mall L.L.C. v. Vanity Shop of Grand Forks, Inc.*, 642 F.Supp.2d 756 (N.D.Ohio 2008). That lease provided that the "[l]andlord shall use its reasonable efforts to mitigate its damages hereunder; however the failure or refusal of Landlord to relet the Premises shall not affect Tenant's liability." The court in *Westfield* declined to interpret this provision as waiving the landlord's common law duty to mitigate its damages. *Id.* However, this provision affirmatively incorporates the common-law duty to mitigate damages. It is not similar

to the provision in the present case that completely abrogates this duty, stating "Tenant shall remain liable for the Fixed Rent * * * for the balance of said term, whether Premises be relet or not * * *." The provisions are not similar, and the case does not aid OfficeMax.

{¶26} The provision in this case sets forth that OfficeMax will be liable for rent for the entire duration of the lease irrespective of the reletting of the premises. This is a sufficiently clear statement of the parties' intention. "Each party must stand or fall upon the written contract * * *." *Ins. Co. v. Brecheisen*, 50 Ohio St. 542, 548, 35 N.E. 53 (1893). Here, the contract expresses a clear intent to waive the landlord's common law duty to mitigate its damages by reletting the premises.

{¶27} A danger to be guarded against in this context is a landlord being placed in a better position than if no breach had occurred. However, the trial court gave OfficeMax a credit in the amount of $234,000 against the amount of judgment in favor of B&G for rents received by B&G from a new tenant that leased a portion of the premises. Therefore, it is not a concern in this case at this point.

### 4. Liquidated Damages Provisions

{¶28} The trial court also determined that the lease contained an enforceable late payment provision that made OfficeMax liable for an additional amount of damages equal to 5 percent of the outstanding rent due under the lease. OfficeMax claims this late payment provisions is an unenforceable penalty. B&G argues it is an enforceable liquidated damages provision for the late payment of rent.

**{¶29}** Punitive damages are generally not recoverable in a breach of contract action. *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 381, 613 N.E.2d 183 (1993). "A remedy is considered to be punitive if it subjects the breaching party to a liability 'disproportionate to the damage which could have been anticipated from breach of the contract.'" *Cintas Corp. v. Joel Lehmkuhl Excavating*, 2d Dist. Montgomery No. 19613, 2003-Ohio-2958, ¶ 13, citing *Lake Ridge Academy*.

> Liquidated damages clauses in contracts are enforceable if they meet various conditions; otherwise, they are unenforceable as penalties for non-performance. The Ohio Supreme Court's decision in *Samson Sales, Inc. v. Honeywell, Inc.* (1984), 12 Ohio St.3d 27, 12 Ohio B. 23, 465 N.E.2d 392, outlines the enforceability test for liquidated damages provisions. First, the amount of actual damages must be uncertain and difficult to prove. Second, the amount of stipulated damages must be reasonable and proportionate to the contract as a whole. Third, the parties' intent to stipulate to damages must be clear and unambiguous. See, also, *Lake Ridge Academy v. Carney* (1993), 66 Ohio St.3d 376, 613 N.E.2d 183.

*Carter v. CPR Staffing, Inc.*, 8th Dist. Cuyahoga No. 94671, 2010-Ohio-6026, ¶ 16.

**{¶30}** Section 2.1(d) of the lease provides,

> Each installment of Fixed Rent shall be due and payable in advance on the first day of each month during the term hereof. Any rent or other sums payable by Tenant to Landlord under this Lease which is not paid within ten (10) days after such payment first becomes due, will be subject to a late charge of five percent (5%) of the amount due. Such late charge will be due and payable as Additional Rent on or before the next day on which an installment of Fixed Rent is due.

**{¶31}** OfficeMax argues that B&G has suffered no damages because it has been fully compensated for rent, attorney fees, and any other expense associated with the lease. This argument has been addressed and rejected by at least one court applying New York law:

> Defendant's argument suggests that in the event that plaintiff suffered no actual damages, the liquidated-damages provision should not be enforced. However, even if we agreed with defendant that plaintiff necessarily suffered no actual damages since no late payments have been processed, defendant's argument is contrary to New York law, under which "the actual damages suffered by the party for whose benefit the [liquidated-damages] clause is inserted in the contract have little relevance to the validity of a liquidated damages clause." *Walter E. Heller & Co., Inc. v. Am. Flyers Airline Corp.*, 459 F.2d 896, 898 (2d Cir.1972). Instead, the propriety of the liquidated-damages clause is to be evaluated as of the time at which the contract was made. *Bradford v. New York Times Co.*, 501 F.2d 51, 57 (2d Cir.1974). A liquidated-damages clause in a commercial lease imposing a one-time payment of three percent of past-due rent and related expenses is not unreasonable. *See K.I.D.E. Assocs., Ltd. v. Garage Estates Co.*, 280 A.D.2d 251, 254, 720 N.Y.S.2d 114, 117 (1st Dept. 200) (late charge of five percent per month not unconscionable in "commercial lease negotiated by sophisticated business people").

*Sidley Holding Corp. v. Ruderman*, S.D.N.Y. No. 08 Civ. 2513, 2009 U.S. Dist. LEXIS 126040, *28 (Dec. 30, 2009). This, in a broad sense, comports with Ohio law where

> a court must view the provision "in light of what the parties knew at the time the contract was formed and in light of an estimate of the actual damages caused by the breach." When a provision was reasonable at the time that it was formulated and bears a reasonable, but not necessarily exact, relationship to the actual damages, the provision is enforceable.

(Citation omitted.) *Harmon v. Haehn*, 7th Dist. Mahoning No. 10 MA 177, 2011-Ohio-6449, ¶ 50, quoting *Kindle Road Co., L.L.C. v. Trickle*, 5th Dist. Licking No. 03CA99, 2004-Ohio-4668, ¶ 21.

{¶32} The damages that would result from the late payment of rent were not easily ascertainable at the time the lease was drafted and executed. The affidavit submitted by B&G attached to its motion in support of the enforceability of the late-payment provision indicated several costs incurred by B&G that would result from late payment. These include sending notices of default and demand letters, "the cost of time spent preparing detailed and complicated matter material analyses of charges and amount due under the lease that change monthly as OfficeMax continues to fail to pay," and the cost of "handling demands for information from lenders and other third parties due to decreased cash flow."

{¶33} Next, the amount of the late-payment provision, 5 percent, must be reasonable in relation to the lease as a whole, and may not be "unconscionable, unreasonable, or disproportionate in amount." *Premium Ents. v. T.S., Inc.*, 9th Dist. Medina No. 2751-M, 1999 Ohio App. LEXIS 396, *9 (Feb. 9, 1999). This provision was freely negotiated by parties of equal bargaining power, and both thought it was a reasonable expression of the damages resulting from the late payment of rent. The parties agreed, at the time of formation, that the provision is a reasonable approximation of those damages, and OfficeMax has failed to show otherwise.

{¶34} Finally, this is a clear statement of the parties' intention to stipulate damages for the late payment of rent. All three prongs of the above test are satisfied, and the late-payment provision is enforceable.

## B. Denial of Motion to Amend

**{¶35}** On October 3, 2012, the trial court issued a journal entry finding:

> Section 7.1 of the parties' contract waives the Plaintiff, B&G Properties' common law duty to mitigate. Specifically, Section 7.1 states:

> "Tenant [Office Max] shall remain liable for fixed rent, additional rent and other obligations * * * herein provided for the balance of the [term of the lease] * * *, whether the premises be relet or not * * * *."

> The court further finds that by agreeing to this provision, Office Max relieved B&G of any duty to relet the premises in the event of a breach by Office Max.

**{¶36}** Both parties moved the trial court to amend its judgment. B&G requested that the court add "no just reason for delay" language to a prior judgment entry and require OfficeMax to post a supersedeas bond. OfficeMax wanted the court to clarify that B&G's duty to mitigate was waived only as to reletting of the premises. Officemax claimed that B&G's failure to file a claim with the bankruptcy court against Borders constituted a unique failure to mitigate its damages not covered by Section 7.2 of the lease. The trial court granted B&G's motion in part by adding "no just reason for delay" language to the April 19, 2012 journal entry granting summary judgment in favor of B&G. However, the court denied the request for a supersedeas bond and OfficeMax's motion to amend.

## 1. Standard of Review

**{¶37}** "Civ.R. 54(B) allows for reconsideration of an interlocutory order, and provides, in pertinent part, that the order 'is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.'" *Forman v. Forman*, 3d Dist. Marion No. 9-06-63, 2007-Ohio-4938, ¶ 19. OfficeMax's motion to amend is akin to a motion for reconsideration of an interlocutory judgment. "A trial court has plenary power in ruling on a motion for reconsideration, and we will not reverse such rulings absent an abuse of discretion." *Mindlin v. Zell*, 10th Dist. Franklin No. 11AP-983, 2012-Ohio-3543, ¶ 23, citing *Groza-Vance v. Vance*, 162 Ohio App.3d 510, 2005-Ohio-3815, 834 N.E.2d 15 (10th Dist.), ¶ 53. An abuse of discretion connotes an arbitrary, unreasonable, or unconscionable decision. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

## 2. Duty to Mitigate

**{¶38}** OfficeMax argues that even if the lease did abrogate B&G's duty to relet the premises, that did not encompass all B&G should be required to do to mitigate its damages, and the trial court erred in denying its motion to amend the judgment. OfficeMax claims B&G should have submitted a claim in bankruptcy against Borders, and its failure to do so constituted a breach of its duty to mitigate damages. However, as previously discussed, OfficeMax is jointly and severally liable for rent for the remainder of the lease term. As such, B&G was not required to pursue a claim against Borders.

**{¶39}** Further, OfficeMax's claim is moot. B&G did receive a payment from Borders as a result of the bankruptcy proceedings, and the trial court offset that amount against OfficeMax's liability. In its motion to amend, OfficeMax estimated that B&G would have received between $22,609.50 and $56,523.74 from the bankruptcy proceedings had it filed a claim against Borders. In fact, the final order of the trial court in this case indicates the judgment against OfficeMax was reduced by $51,248.99 for payments received by B&G from "Borders and/or its bankruptcy estate." The argument OfficeMax wished to make regarding B&G's failure to file a claim against Borders is moot. Therefore, the trial court did not err in overruling OfficeMax's motion to amend the October 3, 2012 journal entry.

### III. Conclusion

**{¶40}** The parties involved are both sophisticated business entities with equal bargaining power. The provisions included in the lease were negotiated by the parties, and they must live by them. Here, that means OfficeMax remains liable for rent owed for the duration of the lease regardless of reletting. Further, the late-payment provision is enforceable as an approximation of the damages that would result from the late payment of rent.

**{¶41}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

MELODY J. STEWART, A.J., CONCURS IN JUDGMENT ONLY;
SEAN C. GALLAGHER, J., CONCURS IN JUDGMENT ONLY IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY IN PART AND DISSENTING IN PART:

{¶42} I respectfully dissent from the lead opinion's determination of the second assignment of error and would find that Section 7.1 of the lease does not contain an express waiver of the landlord's duty to mitigate damages. I concur in judgment only with the remaining assignments of error.

{¶43} A commercial landlord has a duty to mitigate damages, as is reasonable under the circumstances. *Frenchtown Square Partnership v. Lemstone, Inc.*, 99 Ohio St.3d 254, 2003-Ohio-3648, 791 N.E.2d 417. Section 7.1 of the lease does not contain an express provision that releases B&G from its obligation to take actions to mitigate its damages, nor is an implied waiver allowed. The lease merely provides that the tenant would remain liable for the full amount of the rent for the balance of the lease term, regardless of whether the premises were relet, and that the landlord would not be liable for a failure to relet the premises. This provision does not clearly and unambiguously

provide that the landlord is released from its obligation to mitigate damages. Further, the fact that part of the premises may have been relet does not render the mitigation argument moot. The required inquiry is whether B&G's efforts to relet the premises and minimize its damages were reasonable. I would remand the matter to the trial court for a determination of this issue.